(No. 46133.—

RICHARD HARRIS v. ALGONQUIN READY MIX, INC., *et al.,* Appellees.—(Commonwealth Edison Co., Appellant.)

*Opinion filed Nov. 27, 1974.—Rehearing denied Jan. 28, 1975.*

Kirkland & Ellis, of Chicago (Cornelius J. Harrington, Jr., and Gary M. Elden, of counsel), for appellant Commonwealth Edison Co.

Philip H. Corboy and James P. Chapman, both of Chicago, for plaintiff Richard Harris.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Bridgman and Peter J. Mone, of counsel), for appellee Algonquin Ready Mix, Inc.

Schaffenegger & Watson, of Chicago (Jack L. Watson, of counsel), for appellee Pre-Cast Building Sections, Inc.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Plaintiff, Richard Harris, was an employee of Pre-Cast Building Sections, Inc. (Pre-Cast). He was severely injured when a crane he was standing near transmitted an electrical charge from an overhead, high-voltage power line of

Commonwealth Edison Company (Edison) that had not been insulated. Harris filed an action for negligence in the circuit court of Cook County against Edison, premised on its failure to properly maintain the transmission lines and to warn of the danger created by the lines, and against Algonquin Ready Mix, Inc. (Algonquin), the owner of the land on which the crane was operating, for its failure to warn of the danger. Edison and Algonquin then filed third-party indemnity actions against Pre-Cast, basically alleging that any wrongdoing on their part consisted of passive negligence and that Pre-Cast's active and primary negligence was the proximate cause of the accident. Edison additionally filed a counterclaim against Algonquin for indemnification upon the same theory (active-passive negligence) advanced in its third-party action. A jury returned a verdict on behalf of plaintiff against Edison and Algonquin for $300,000. The jury also found in favor of Algonquin and Pre-Cast on Edison's respective counterclaim and third-party action. Finally, the jury returned a verdict for $40,000 on behalf of Algonquin against Pre-Cast in the former's third-party action, but that amount was increased to $300,000 by the trial court upon Algonquin's motion.

On appeal by Edison, Algonquin and Pre-Cast, the appellate court affirmed plaintiff's judgment against Edison but reversed plaintiff's judgment against Algonquin, holding that on the evidence presented the trial court should have granted Algonquin's motion for a judgment notwithstanding the verdict. The appellate court further affirmed the judgments against Edison on its counterclaim and third-party action. And, finally, the judgment in favor of Algonquin in its indemnity action against Pre-Cast was reversed. (*Harris v. Algonquin Ready Mix, Inc.*, 13 Ill. App. 3d 559.) Only Edison petitioned for leave to appeal, which we granted.

The only issues raised by Edison concern the validity of the appellate court's judgment *n.o.v.* in favor of

Algonquin and the related subsidiary issue of whether the trial court erred in preventing introduction of evidence of a prior incident involving contact by a crane owned by Pre-Cast with overhead electrical wires which caused a power failure. Edison asserts that Harold Anson, an officer of both Pre-Cast and Algonquin, could have known of this incident and therefore been aware of the danger which could exist in the operation of a crane near the wire which might be used as a high-voltage transmission line. Edison concludes that had this evidence been presented, Edison may have prevailed in its counterclaim against Algonquin. Edison has expressly waived other possible assertions of error it might have raised.

We need only recite those facts necessary for disposition of this appeal. On August 14, 1964, plaintiff was standing near a crane which was operating at the southern edge of Algonquin's property in McHenry County. Pre-Cast was dumping concrete slabs on the property to be used apparently as landfill. Plaintiff took hold of a slab being hoisted by the crane in an effort to position it when the crane "boom" either scraped or came too close to the uninsulated power line, creating an electrical arc. The transmission line carried about 35,000 volts of electricity. As a result of the electrification, plaintiff suffered extensive burns, impairment of his walking ability and amputation of his right arm.

At trial evidence was presented that no signs were posted in the area to warn of the dangerous condition of the wire. Further testimony established that two Edison line patrolmen knew that cranes were being operated in the area, yet they gave no warning of the danger although it was their responsibility to do so.

We do not believe exclusion of the testimony relating to the possibility of a prior contact of the electrical wires by a Pre-Cast crane was prejudicial as to Edison's counterclaim for indemnity against Algonquin. Throughout Edison's briefs filed in this appeal it has taken the position

that had this evidence established that Algonquin knew or should have known the dangerous condition that was created when a crane was operating near the uninsulated, high-voltage transmission line, then it was under a duty to warn crane workers of the danger. Edison further characterizes the basis of its liability singularly on the fact that "its inspectors examined wires on the Algonquin property several months before the accident and saw the Pre-Cast cranes which were being used near Edison wires." During oral argument of this cause, Edison's counsel has conceded that it was liable by reason of the failure of its line inspectors to warn of the danger. Citing *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, Edison urges that had it not been for the inaction of its line inspectors then it would not be liable as a matter of law.

The parties herein do not question prevailing law which holds that a tortfeasor may seek to impose indemnity upon another wrongdoer if there exists a "qualitative distinction between the negligence of the two tortfeasors." (*Chicago and Illinois Midland Ry. Co. v. Evans Construction Co.*, 32 Ill.2d 600, 603.) The various decisions related to the question have allowed indemnity to a tortfeasor whose misconduct is "passive" compared to the other tortfeasor's wrongdoing which is "active" in nature. (*Carver v. Grossman*, 55 Ill.2d 507, 511.) In the present case Edison has conceded that it had a duty to warn plaintiff or Pre-Cast of the danger, and it has argued that Algonquin had the same duty. In *Carver v. Grossman*, we said at page 513, "this court [has] held that in light of the fact that both tortfeasors owed the plaintiff the same duty which they both breached, there could be no total shifting of responsibility from one to the other." Thus even assuming *arguendo* the validity of Edison's position in relation to the introduction of the prior accident involving Pre-Cast, Edison's action against Algonquin for indemnity was improper.

Edison's attempt to challenge the judgment of the

appellate court granting a judgment *n.o.v.* to Algonquin against plaintiff presents a novel situation. Plaintiff did not file a petition for leave to appeal from this portion of the appellate court judgment for reasons hereinafter set forth, yet plaintiff has sought to join with Edison in the latter's reply brief in this court seeking reversal of this judgment. As will become apparent, however, Edison is the real party interested in determining the validity of this portion of the appellate court judgment.

Following rendition of the appellate court opinion and prior to this court's granting Edison's petition for leave to appeal, Edison and plaintiff entered into what is described as a "loan agreement." We are advised that by the pertinent terms of this agreement Edison has advanced funds to plaintiff and Edison's counsel has stated that the amount given is equal to plaintiff's judgment against Edison. Plaintiff has agreed to repay the "loan" out of any portion of a judgment plaintiff may actually collect from Algonquin, and plaintiff will endeavor to enforce his judgment by reasonable legal process. Alternatively, instead of repayment, plaintiff could "assign" his right to collect the judgment against Algonquin to Edison.

As stated in Edison's brief and amplified during oral argument, if the judgment *n.o.v.* in favor of Algonquin is reversed, then plaintiff will attempt to collect as much of the judgment as possible from Algonquin or assign his right to Edison. If the appellate court judgment is affirmed, plaintiff will merely give Edison a satisfaction of judgment. Should the former situation result and Algonquin be forced to pay the judgment, then reconsideration must be given to the appellate court's reversal of the third-party indemnity action between Algonquin and Pre-Cast, for such reversal was obviously predicated on the appellate court's determination of Algonquin's nonliability in the underlying action. It is thus possible to conceive of the situation wherein Pre-Cast will bear the full burden of satisfying plaintiff's judgment, if Edison is successful in

attacking the judgment *n.o.v.* in favor of Algonquin.

Algonquin and Pre-Cast have urged that Edison lacks standing to assert the correctness of the appellate court's judgment *n.o.v.* in favor of Algonquin. As was stated in *Hotchkiss v. City of Calumet City*, 377 Ill. 615, 617, "It is the established rule that the right to appeal exists only in favor of a party whose rights have been prejudiced by the judgment or decree appealed from."

In support of its position that it has standing, Edison has cited *Chas. Ind Co. v. Cecil B. Wood, Inc.*, 56 Ill. App. 2d 30, 44, and *Newark Electronics Corp. v. City of Chicago*, 130 Ill. App. 2d 1021, 1027, wherein the appellate courts respectively held that a defendant might appeal a judgment rendered against the plaintiff and in favor of a co-defendant when that judgment would affect the defendant's indemnity claim against the co-defendant in a third-party action. This situation is not present in this appeal, for we have held that there is no basis for indemnity in the action between Edison and Algonquin, and Edison has expressly waived consideration of its third-party action against Pre-Cast. Additionally, plaintiff's support of Edison's position must be discounted, for it is obviously predicated upon the terms of the "loan agreement," which requires that plaintiff reasonably seek to enforce any judgment he might obtain against Algonquin.

Edison has also suggested that the "loan agreement" affords a basis for its challenge to the judgment *n.o.v.* Edison equates the "loan agreement" to that approved by a majority of this court in *Reese v. Chicago, Burlington & Quincy R.R. Co.*, 55 Ill.2d 356. Examination of our opinion in that case clearly shows that the "loan agreement" was made prior to trial before liability of the multiple defendants could be adjudicated. There is no language contained therein which fairly suggests that such a procedure would be approved on appeal to provide a sole basis whereby a defendant, who is alleged to be a joint tortfeasor and against whom liability is determined, might

seek consideration of an issue previously decided adversely to the plaintiff in his action against a co-defendant. Acquiescence to Edison's position under such circumstances would be tantamount to this court's approval of an assignment of a personal injury judgment on appeal to a party who has been found liable for the injury and who does not now even contest this liability. Moreover, it would countenance an attempt at indirect indemnification under circumstances where indemnity is not proper. We are of the opinion that *Reese* is not applicable and that decision confers no basis upon which Edison may challenge the judgment *n.o.v.* in favor of Algonquin.

For these reasons consideration of the propriety of the appellate court's judgment *n.o.v.* in favor of Algonquin is unnecessary. Accordingly, the appellate court determination upholding the judgment in favor of Algonquin in Edison's counterclaim is affirmed. That portion of Edison's appeal challenging the judgment *n.o.v.* is dismissed.

*Affirmed in part, and*
*dismissed in part.*