GEORGE FELTY, Plaintiff-Appellee, *v.* GENERAL TELEPHONE COMPANY
OF ILLINOIS, Defendant-Appellant.

Fifth District   No. 75-106

Opinion filed April 7, 1977.

G. MORAN, J., dissenting.

Charles R. Jelliffe, of Jelliffe & Ferrell, of Harrisburg, for appellant.

Harris and Lambert, of Marion, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This is an appeal by the General Telephone Company of Illinois from a

judgment for plaintiff George Felty in a personal injury action in the Circuit Court of Williamson County. The action was based on the alleged negligence of five defendants, including the telephone company, in the process of transporting a large oil circuit breaker through the streets of the city of Metropolis. The jury returned a verdict of $950,000 in favor of plaintiff against all the defendants.

General Telephone raises several issues on this appeal: whether the trial court erred in denying its motions for directed verdicts and for judgment *n.o.v.*; whether allegedly improper conduct by plaintiff's counsel prejudiced the jury's verdict; whether the court erred in failing properly to instruct the jury as to appellant's theory of the case; whether the court improperly admitted certain evidence; and whether a post-judgment loan-receipt agreement entered into by plaintiff and the other four defendants was invalid. Because we have concluded that the conduct of the telephone company, if negligent, was not the legal or proximate cause of plaintiff's injury, we need reach only the first of these issues.

Plaintiff, a 48-year-old journeyman lineman, had been hired to ride atop circuit breakers (which weighed nine tons each and were 16 feet 2½ inches in height) as they were moved on a lowboy trailer pulled by a truck. His job was to lift power lines, tree limbs and telephone cables above the load as necessary along the route. On the third trip along the same route, the load came into contact with a telephone pole support cable owned and maintained by General Telephone. The cable caught the top of the bushing of the circuit breaker on which plaintiff was riding, and he was thrown to the pavement below, sustaining injuries that resulted in permanent paralysis of his lower extremities.

The complaint alleged that the telephone company was negligent in allowing the cable to extend across the roadway at a height less than 18 feet above the surface thereof, in violation of Rule 232 of the Rules for Construction of Electric Power and Communications Lines of the Illinois Commerce Commission; allowing the cable to extend across the roadway at a height of approximately 17 feet 10 inches above the surface when it knew or should have known that lowboy trucks carrying circuit breakers approximately 18 feet high were likely to pass under the cable; failing to raise the cable to a safe height above the roadway surface; and failing to inspect the height of the cable to determine whether or not it was less than 18 feet above the roadway surface.

■■ Although the testimony was conflicting and the measurements upon which it was based were imprecise, there was sufficient evidence to raise a question for the jury as to whether or not the telephone company was negligent. Even if it were negligent, however, we think that, as in *Merlo v. Public Service Co.*, 381 Ill. 300, 45 N.E.2d 665 (1942), the intervening, independent acts of the other defendants were the proximate

cause of plaintiff's injuries. In *Merlo*, judgment notwithstanding the verdict was granted to the defendant power company in a wrongful death action where plaintiff's decedent had been electrocuted as the boom of a negligently operated crane came into contact with a sagging, improperly insulated wire owned by the power company. Finding that the power company had a duty to maintain the wire and that "there was sufficient evidence in the record tending to prove the negligence charged * * * if it was further established by the evidence that such negligence was the proximate cause of the injury," the court in *Merlo* nevertheless decided as a matter of law that the lack of insulation and the sagging wire only furnished a condition and the "intervening, independent act of the crane operator was the efficient and proximate cause of the fatal injuries * * *." 381 Ill. 300, 316, 318, 45 N.E.2d 665, 674-75.

In the instant case, all the parties involved were aware of the presence of the cable; in fact, the entire purpose of the elaborate preparations and precautions planned, although obviously not properly executed, was to insure the safe passage of the circuit breakers under overhead obstacles, including the telephone support cable here in question. Plaintiff's sole purpose in being on top of the circuit breaker was to assist in this safe passage. The route to be taken in the movement of the circuit breakers and the obstacles to be cleared had been both planned and noted approximately one month before the date of the actual movement. An employee of New Berlin Transit, Inc., the defendant which supervised the transportation of the circuit breakers, estimated the cable to be slightly more than 18 feet above the roadway. Notwithstanding, the telephone company was never notified of the movement of the circuit breakers through Metropolis or requested to assist by temporarily removing or raising the cable in question. The plaintiff himself examined the route of travel and possible overhead obstacles to be cleared.

Prior to the accident, the same truck, loaded with identical circuit breakers, driven by the same driver, had made two trips over the route taken at the time of the accident without incident. On the previous occasions the truck moved slowly under the cable. Plaintiff testified that on each occasion the truck had slowed to a stop before proceeding, and that he raised the cable about one-half an inch or one inch above the circuit breaker before the truck proceeded. On the previous occasions a "spotter" had preceded the truck and flagged it to a stop before it reached the cable.

On the third trip, the "spotter" stopped the truck about a block before reaching the cable but then left to locate a second truck traveling behind the truck on which plaintiff was riding. The driver then proceeded under the wire at a constant speed; he did not slow the truck. The plaintiff, observing the wire, yelled to the driver to slow down. Apparently the

driver did not hear, as he continued without stopping and the accident occurred.

If negligence, defendant's conduct does not encompass the risk to plaintiff revealed by these facts. There is no doubt that this overhanging cable was a cause of plaintiff's accident, as "but for" the presence of the cable the accident would not have happened, but under these facts defendant's conduct is not the legal, or proximate, cause of plaintiff's injury. (For a discussion of the difficulties of applying the concept of "proximate cause," see W. Prosser, Law of Torts § 41 *et seq.* (4th ed. 1971).) The basis of liability and nonliability is not easily resolved in terms of legal theory. Whether analyzed in terms of "duty" or "foreseeability" (see *Cunis v. Brennan*, 56 Ill. 2d 372, 308 N.E.2d 617 (1974); *cf. Winnett v. Winnett*, 57 Ill. 2d 7, 310 N.E.2d 1 (1974), and *Ray v. Cock Robin, Inc.*, 57 Ill. 2d 19, 310 N.E.2d 9 (1974)), the ultimate determination of nonliability under these unusual factual situations is based, as Professor Prosser suggests, on considerations of policy and some sense of fairness or justice. W. Prosser, Law of Torts §§ 42, 43 (4th ed. 1971).

■■■ "If a negligent act or omission does nothing more than furnish a condition making an injury possible, and such condition, by the subsequent independent act of a third person, causes an injury, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury." (*Briske v. Village of Burnham*, 379 Ill. 193, 199, 39 N.E.2d 976, 979 (1942).) As in *Briske*, it was the negligent inattention of the driver of the truck transporting the circuit breakers, the absence of the spotters or lookouts, or the concurrence of both that was the immediate cause of plaintiff's injuries. The defendant could not reasonably foresee such unusual, intervening acts of negligence; the express purpose of the precautions taken was to insure that the circuit breakers would be transported safely under overhead wires and objects, the existence of which was known to all parties concerned with the movement of the circuit breakers.

These acts or omissions were superseding or intervening causes which under these facts should relieve the telephone company of liability. (See Restatement (Second) of ·Torts §§ 440, 441 (1965).) We agree with appellant that the facts in *Merlo* are similar to the facts in this case. In a recent opinion of the Illinois Supreme Court (*Davis v. Marathon Oil Co.*, 64 Ill. 2d 380, 356 N.E.2d 93 (1976)), the court, while noting that each case must turn on its own facts, cited *Merlo* with approval. (See also *Watson v. Byerly Aviation, Inc.*, 7 Ill. App. 3d 662, 288 N.E.2d 233 (3d Dist. 1972); *Ferguson v. Southwestern Bell Telephone Co.*, 8 Ill. App. 3d 890, 290 N.E.2d 429 (5th Dist. 1972).) We therefore hold that the intervening negligence of the other defendants was the sole, efficient cause of plaintiff's injuries.

For the foregoing reasons, the judgment of the Circuit Court of Williamson County is reversed.

Reversed.

JONES, J., concurs.


Mr. JUSTICE GEORGE J. MORAN, dissenting:

In urging us to find as a matter of law that the negligence of General Telephone was not the proximate cause of plaintiff's injuries, General Telephone cites the case of *Merlo v. Public Service Co.*, 381 Ill. 300, 45 N.E.2d 665. In that case, judgment notwithstanding the verdict was granted to the defendant power company in a wrongful death action where plaintiff's decedent had been electrocuted as the boom of a negligently operated crane came into contact with a sagging, improperly insulated wire owned by the power company. Finding that the power company had a duty to maintain the wire and that "there was sufficient evidence in the record tending to prove the negligence charged * * * if it was further established by the evidence that such negligence was the proximate cause of the injury," the court in *Merlo* nevertheless decided as a matter of law that the lack of insulation and the sagging wire only furnished a condition and the "intervening, independent act of the crane operator was the efficient and proximate cause of the fatal injuries * * *."

I agree with appellant that the facts in *Merlo* are similar to the facts in this case and if *Merlo* were the sole authority on this question, we should decide this issue in favor of defendant. However, in my opinion subsequent supreme court cases indicate that if the supreme court were now faced with the same facts as those in *Merlo*, it would decide the question of proximate cause differently. It would now most probably say that this was a question of fact for the jury.

For example, shortly after the decision in *Merlo*, the supreme court decided the case of *Neering v. Illinois Central R.R. Co.*, 383 Ill. 366, 50 N.E.2d 497. In *Neering* the plaintiff filed a complaint for damages as a result of being assaulted while she was awaiting the arrival of a train. The jury awarded her a verdict which the trial court refused to overturn. The defendant contended that its negligence, if any, was not the proximate cause of plaintiff's injuries because an abnormal criminal act of a third person broke the chain of causation.

The supreme court held that under the circumstances the question of proximate cause was for the jury, saying at pages 380-81:

> "An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong

and the injury and itself becomes the direct and immediate cause of the injury. [Citations.] The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. [Citations.] What is the proximate cause of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all of the evidence." 383 Ill. 366, 380-81.

In *Ney v. Yellow Cab Co.* 2 Ill. 2d 74, 117 N.E.2d 74, the appellate court affirmed a judgment of the trial court fixing liability on the defendant for violation of the Uniform Traffic Act. The complaint charged that defendant, by its servant, negligently permitted its taxicab to remain unattended on a Chicago street without stopping the engine or locking the ignition or removing the key, contrary to a section of the Act. The undisputed facts revealed that a thief stole the taxicab and while in flight ran into plaintiff's vehicle causing property damage. The defendant contended that its negligence, if any, was not the proximate cause of the injury.

In holding that whether or not the defendant's negligence was the proximate cause of plaintiff's injuries, the court gave a long and scholarly discussion of the proximate cause doctrine. In holding that the case presented a question of fact for the jury as to whether the thief's acts were foreseeable and thus the proximate cause of plaintiff's damage, the supreme court said,

> "Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide. The right of trial by jury is recognized in the Magna Charta, our Declaration of Independence and both our State and Federal constitutions. It is a fundamental right in our democratic judicial system. Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions from the jury is to usurp its function." 2 Ill. 2d 74, 84.

In both the *Neering* case and the *Ney* case primary emphasis was placed on whether the subsequent act of the third party was foreseeable and that this was a question of fact for the jury. This same test was also adopted in *Ray v. Cock Robin, Inc.*, 57 Ill. 2d 19, 310 N.E.2d 9.

In the recent opinion of the supreme court in the case of *Davis v. Marathon Oil Co.*, 64 Ill. 2d 380, 356 N.E.2d 93, the defendant claimed

that its negligence was not the proximate cause of plaintiff's injuries by reason of the alleged intervening and independent causes. In deciding that the question of proximate cause was for the jury, the supreme court restated the language from *Neering* previously cited in the opinion and then said:

> "Defendant has cited cases in which a defendant's negligent conduct was determined as a matter of law not to have proximately caused the resulting injuries. (*Merlo v. Public Service Co.* (1942), 381 Ill. 300;[1] *Watson v. Byerly Aviation, Inc.* (3d Dist. 1972), 7 Ill. App. 3d 662; *Waters v. Futuristic Homes, Inc.* (1st Dist. 1971), 131 Ill. App. 2d 143.) We emphasize, however, that each case must turn on its own facts. Defendant remains liable for its negligence if the intervening event was foreseeable. Moreover, to escape liability, defendant must demonstrate that the intervening event was unforeseeable as a matter of law. This we cannot conclude. Proximate cause is ordinarily a question for the jury to decide. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 84.)" 64 Ill. 2d 380, 395.

In my opinion, the question of whether General Telephone's negligence was the proximate cause of plaintiff's injuries was a question of fact for the jury.

There are other important issues in this case which have not been passed on by the majority. I will therefore discuss them.

General Telephone also contends that the court improperly instructed the jury as to proximate cause, thus preventing the jury from considering its theory of the case. At the close of plaintiff's and defendant's cases-in-chief, plaintiff offered the following Illinois Pattern Instruction on proximate cause:

> "When I use the expression 'proximate cause', I mean any cause which, in nature or probable sequence, produced the injury complained of. [It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.]" IPI Civil No. 15.01.

Defendant General Telephone objected to this instruction at the conference on instructions on the ground that it failed to explain to the jury the effect of an intervening cause breaking the proximate causal connection. General Telephone then tendered its own instruction which added the following paragraph to plaintiff's instruction on proximate cause:

> "However, if the act, or failure to act, of the party sought to be

---

[1] I do not agree that the Supreme Court quoted *Merlo* with approval in *Davis*. It only mentioned the *Merlo* case without discussion and then proceeded to hold just the opposite.

charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of another person, the creation of the condition is not the proximate cause of the injury."

Defendant's instruction was rejected by the trial court and the IPI instruction on proximate cause was given instead.

In discussing the propriety of the giving of any IPI instruction, we are bound to follow the mandate of Supreme Court Rule 239(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 239(a)):

"Use of IPI Instructions; Requirements of Other Instructions. Whenever Illinois Pattern Jury Instructions (IPI) contains an instruction applicable in a civil case, giving due consideration to the facts and the prevailing law, and the court determines that the jury should be instructed on the subject, the IPI instruction *shall* be used, unless the court determines that it does not accurately state the law. Whenever IPI does not contain an instruction on a subject on which the court determines that the jury should be instructed, the instruction given on that subject should be simple, brief, impartial, and free from argument." (Emphasis added.)

In each instance where the Supreme Court Committee recommended an instruction, it was supplemented with explanatory notes stating the reason and the authority for the recommendation. Parts of the Committee Comments to Illinois Pattern Instruction No. 15.01 read as follows:

"This instruction in its entirety should be used only when there is evidence of a concurring or contributing cause to the injury or death (other than acts or omissions of the plaintiff). In cases where there is no evidence of a concurring or contributing cause, the short version without the bracketed material should be used.
\* \* \*

An instruction encompassing the bracketed material is proper in litigation where there is evidence that something or the acts of someone other than the negligence of the defendant, or intoxication of a person who has been sold or given intoxicants, was a proximate cause of the injury or death. *James v. Checker Taxi Co.*, 22 Ill. App. 2d 22, 159 N.E.2d 12 (1st Dist. 1959); *Harrold v. Clinton Gas & Electric Co.*, 205 Ill. App. 12 (3d Dist. 1917); *St. Clair v. Douvas*, 21 Ill. App. 2d 444, 158 N.E.2d 642 (1st Dist. 1959)."

The *St. Clair v. Douvas* case contained the following language:

"Any intervening cause is not sufficient to break the causal connection between the wrong and the injury. It must be a new and independent force, the intervention of which was not probable

or foreseeable by the first wrongdoer. Casey v. Burns, 7 Ill. App. 2d 316, 326. In that case the court further says:

'Where the party responsible for the initial act knows or should know that, if an occasion is given, a particular so-called intervening cause will be likely to exert itself, the furnishing of such an occasion may be in itself an act causing such party to be liable for the result flowing as the effect of such intervening cause, where the intervening cause is within the control of the party responsible for the initial act: Phillabaum v. Lake Erie & W. R. Co., supra. The intervention of independent, concurrent, or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable: Neering v. Illinois Cent. R. Co., supra; O'Brien v. Musfeldt (1951), 345 Ill. App. 12.' " 21 Ill. App. 2d 444, 455-56.

Thus it is clear from the Committee Comments that the Committee meant this instruction to cover a situation where the defendant contended that his negligence was not the proximate cause of the injury because of an independent intervening cause.

In the foreword to its work on instructions, the Committee stated:

"The criteria underlying the Committee's policies bears restatement:

First, the Committee has been opposed to negative instructions, that is, instructions which tell the jury to not do something.

Second, the Committee has not recommended instructions which single out a particular item of evidence for comment, even where there is judicial authority for the instruction.

Third, the Committee has been reluctant to recommend instructions that would be appropriate only in an exceptional case and are likely to be sources of error.

Fourth, and perhaps most important, the Committee has opposed over particularizing. It has preferred to rely upon one instruction which is general in nature and has avoided creating a number of instructions on a subject which is adequately covered by the single general instruction.

Underlying all these considerations has been a major policy. We have viewed the problem of communicating law to the jury as one best handled by a partnership between court and trial counsel rather than by the court alone. The Court will in understandable language fairly state the law, permitting counsel on each side to supply adversary emphasis, rather than try to neutralize partisan instructions, sounding first like plaintiff's counsel and then in the next sentence like defense counsel. In brief, on many occasions

when the Committee has rejected an instruction, it has felt not so much that the point ought not be told to the jury, but rather that it should be told to the jury by counsel rather than by the Court."

IPI Instruction No. 15.01 permits counsel for the defendant to argue to the jury that his client's conduct was not a cause which in natural or probable sequence caused plaintiff's injury, while plaintiff's counsel would probably base his argument on the bracketed material.

Instructions should be intelligible, accurate, clear, and not unduly verbose. Defendant's proposed addition was not accurate because it was not a complete statement of the law since it left out the element of foreseeability. Thus it would not have been proper to give it in any event.

The court should instruct the jury in plain and simple language, and it should harmonize the instructions so that they will present legal questions in a consistent and intelligible way to the jury. The test of the correctness or propriety of instructions is not what meaning the ingenuity of counsel can, at leisure, attribute to them, but how and in what sense, under the evidence before them and the circumstances of the trial, ordinary men acting as jurors will understand the instructions.

In my opinion, the language of IPI No. 15.01 is plain and simple and ordinary men and women would have no difficulty understanding it, especially when aided by argument of able counsel.

The first incident occurred when the law partner of plaintiff's attorney entered the court room during the examination of a witness by one of the defendant's counsel and whispered to his partner in the presence of the jury, "You ought to try to get in that evidence about raising the line." This referred to defendant's repair of the telephone line after the accident and raising of the line to a higher elevation than it was at the time of the occurrence. This evidence had been properly excluded prior to this incident and defendant claims that the jury heard the whisper and took the evidence commented upon therein as an admission of General Telephone's guilt. Following the close of the trial, however, plaintiff obtained the affidavits of the four jurors who were seated closest to plaintiff's counsel table and each juror stated that they had not heard the comment. Questions involving the conduct of counsel are generally left to the discretion of the trial court and reversible error occurs only when liability is a close question and counsel's conduct clearly deprives a litigant of a fair trial and improperly prejudices the jury in its verdict. (*Martin v. Kralis Poultry Co.*, 12 Ill. App. 3d 453, 297 N.E.2d 610.) The conduct of the law partner of plaintiff's attorney clearly did not deprive defendant of a fair trial and is not reversible error.

The second instance of alleged misconduct, allegedly occurred during the testimony of Gerald Tanner, a General Telephone lineman who on the

date of the accident, while driving from his home to work, had passed by the two trucks and circuit breakers involved in the accident.

The defendant telephone company moved for a mistrial at the end of Tanner's testimony because of the alleged misconduct of the attorney for the plaintiff and an attorney for a co-defendant who allegedly stated that Tanner had a legal duty to stop the trucks in question. There are no such statements in the record, so this contention is also without merit.

Defendant also argues that admission of testimony concerning the fact that the plaintiff's wife wore a pacemaker was prejudicial and constituted prejudicial error. Over objections of counsel, plaintiff's wife was allowed to testify that she wore a pacemaker on her heart that required surgical intervention every 18-24 months at an approximate cost of $2500 for each hospitalization. Prior to the accident, these expenses had been paid through a union health plan. Plaintiff's permanent disability, however, caused him to lose the benefits of the hospitalization program and the evidence regarding the pacemaker was introduced to show that plaintiff's loss of hospitalization benefits and resulting liability for his wife's medical costs was an injury to plaintiff and therefore should be considered as an element of damages.

Evidence of the family circumstances of a party is generally held inadmissible in an action to recover compensatory damages for personal injuries. (Annot., 37 A.L.R.3d 1082, 1085 (1971); *McCarthy v. Spring Valley Coal Co.*, 23 Ill. 473; *Brayfield v. Johnson*, 62 Ill. App. 2d 59, 210 N.E.2d 28.) In a personal injury action compensation is sought for the injuries of an individual plaintiff and damages sustained by plaintiff's family are not a part of his personal action. Evidence of a plaintiff's family circumstances, therefore, is irrelevant and inadmissible on the issue of damages. Moreover, where the evidence sought to be introduced relates to the distressed circumstances of the plaintiff's family, it is regarded by most courts as unduly prejudicial to the defendant and thus inadmissible. (37 A.L.R.3d 1082, 1095 (1971).) The prejudicial effect of such evidence, however, depends on a variety of circumstances and varies widely from case to case. (Annot., 59 A.L.R.2d 371 (1958).) As a result, each case must be considered individually and where evidence of distressed family circumstances is erroneously admitted, whether such admission is reversible or harmless error will depend on the particular evidence introduced and the circumstances involved.

Mrs. Felty testified that she wore a pacemaker, that surgical intervention was required every 18-24 months to replace the pacemaker's batteries, that the approximate cost of each operation was in the range of $2500 and that because of her husband's injury the costs of her operation would no longer be covered under the union hospitalization program.

This evidence was referred to in the testimony of Dr. Ellis, an economist, who testified as to the economic losses due to plaintiff's injuries. In his closing statement, plaintiff's counsel briefly recounted Dr. Ellis's testimony regarding plaintiff's injuries, including that relating to the cost of Mrs. Felty's periodic surgery.

These were the only instances in which Mrs. Felty's condition was brought to the attention of the jury. In each instance the testimony was referred to as evidence of an injury to plaintiff in the exact amount of $2500 every 18-24 months. There was no effort to exploit the impact of the testimony beyond the limited purpose for which it was introduced and the jury was well aware that this evidence had to do only with the fixing of damages after it reached a finding of liability. Considering the other evidence presented at trial, including extensive testimony regarding plaintiff's future loss of earnings, his extreme pain and constant suffering, the grievous nature of the injuries and the prospect of future surgery and increasing suffering, it cannot be said that the evidence of Mrs. Felty's heart condition was so prejudicial as to have affected the jury's determination of liability. The properly admitted evidence had a far greater potential for evoking the sympathy and passion of the jury than did the evidence of Mrs. Felty's heart condition, and it appears very unlikely that the result would have been any different had Mrs. Felty's testimony not been admitted. An error in the admission of evidence will not cause reversal where the evidence is of small consequence to the result at trial. *Saputo v. Fatla*, 25 Ill. App. 3d 775, 324 N.E.2d 34; *Phillips v. Shell Oil Co.*, 13 Ill. App. 3d 512, 300 N.E.2d 771.

In *Raines v. New York Central R.R. Co.*, 51 Ill. 2d 428, 283 N.E.2d 230, the court held that where there was other proper evidence to support the verdict, the validity of defendant's contention that the admission of evidence regarding future inflationary economic trends would not be considered. In that case the court said:

"Without acknowledging error in the admission of the evidence regarding inflation, the plaintiff contends, citing [citations], that reversal, if the admission of the evidence was improper, is called for only if the verdict was excessive and in this case the verdict was not excessive. The defendant would distinguish these cases on the ground that, although the courts there found harmless error, they did so because the appellant did not question the verdict as excessive. Here the defendant maintains that the verdict is excessive, and that its excessiveness is a consequence of the introduction of evidence of inflation. It has not, however, called attention to any decision holding that the simple assertion that damages are excessive precludes a finding of harmless error, even

though the verdict is supported by other proper evidence." (51 Ill. 2d 428, 436.)

In the present case the defendant does not contend that the damages are excessive, so this contention likewise will not be considered.

Finally, it is General Telephone's contention that the loan-receipt agreement entered into between the plaintiff and four of the defendants is void as against public policy.

Subsequent to the judgment against the five defendants, the plaintiff entered into an agreement which provided for the loan of $750,000 to be advanced by the four defendants other than General Telephone without interest and to be repayable only out of any sums collected from the remaining defendant, General Telephone, either by way of settlement or execution of judgment. The loan is otherwise not repayable. In return, plaintiff promised to "use and pursue all reasonable and legal means including full pursuit to final judgment, and, if necessary, appeals to final conclusion" to collect against General Telephone in this action and in a pending action of plaintiff's wife for loss of consortium, which also originally involved the other defendants. An express provision of this agreement states that the agreement does not represent a covenant not to sue and that it was entered into in accordance with the Illinois Supreme Court decision in *Reese v. Chicago, Burlington & Quincy R.R. Co.*, 55 Ill. 2d 356, 303 N.E.2d 382.

On the same date that the loan-receipt agreement was signed by the plaintiff and the four defendants, the plaintiff made a motion which was granted to vacate the judgment against these four defendants. Upon learning of the agreement, the remaining defendant, General Telephone Company, sought and was granted permission to amend its post-trial motion, wherein it challenged the validity of the loan-receipt agreement and asked the court to release General Telephone from the judgment or, alternatively, to apply the payment made to the plaintiff under the agreement as a partial satisfaction of the judgment. As the other defendants had already been dismissed, notice of this amendment was given only to the plaintiff; and the trial court denied both the post-trial motion and the amendment after a hearing at which only the attorneys for the plaintiff and for General Telephone were present. In this appeal General Telephone urges us to invalidate the loan-receipt agreement and thereby grant the relief they had prayed for in their amendment to the post-trial motion.

There can be little doubt that the trial court had the power to consider this post-trial request to compel a credit on the judgment. (*Sandburg v. Papineau*, 81 Ill. 446; *Gatto v. Walgreen Drug Co.*, 23 Ill. App. 3d 628, 320 N.E.2d 222.) In the *Sandburg* case, the supreme court stated:

"There is no principle of law better recognized than that which gives to courts of record power over the process of their courts. It is essential to the administration of justice, and it by no means depends upon statutory enactment, but the power is coeval with the common law courts; * * *. If a judgment were satisfied, and, through mistake or by design, an execution were to issue upon it, does anyone suppose the court from which it issued is powerless to recall and quash it? Or if it was only partially satisfied, and an execution were to issue for the full amount of the judgment, would any one have the hardihood to say that the court could not order the credit to be indorsed on the execution? So the court has power, in all cases, to compel credits on judgments or executions, where it would be illegal or inequitable to proceed to collect the amount claimed." (81 Ill. 446, 448-49.)

In the case of *Weaver v. Bolton,* 61 Ill. App. 2d 98, 209 N.E.2d 5, a defendant sought to have credited to the judgment against him an $8,000 payment which the plaintiff has received from a co-tortfeasor who was not a party to the suit as the result of a covenant not to sue in a related dram shop action. The petition was filed for the first time after the denial of the post-trial motion under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72), moving for relief from or modification of the judgment. While the appellate court did not recognize the defendant's petition as proper under section 72, since section 72 relief may not be granted upon facts known to the defendant before judgment, still it found:

"This does not mean, however, that the trial court was without jurisdiction to hear such petition. It had authority to make such orders and issue writs as were necessary to carry its judgments into effect and to render them operative. This power continued in the court until its judgments were satisfied, and the present proceeding pertained to the satisfaction of these judgments rather than their modification as that term is generally understood. Many such questions arise subsequent to judgment in which jurisdiction is to be exercised." 61 Ill. App. 2d 98, 105.

In the case of *Price v. Wabash R.R. Co.,* 30 Ill. App. 2d 115, 174 N.E.2d 5, the railroad company sought to be released from a judgment in a personal injury action because the plaintiff had already received a payment for more than the amount of the judgment from a party which had originally been a co-defendant with the railroad. This party had entered into a settlement agreement with the plaintiff and had subsequently been dismissed. The issue was raised in a motion for judgment notwithstanding the verdict. In finding for the railroad, the appellate court quoted the ruling in *Aldridge v. Morris,* 337 Ill. App. 369, 86 N.E.2d 143, as follows:

"This court holds that where plaintiff receives a payment for a covenant not to sue from one against whom tort liability could lie, such payment, made before or after judgment, may be deducted from the damages recoverable from persons whose tort liability arises out of the same circumstances, irrespective of whether the covenantee is made a party to the suit." (337 Ill. App. 369, 380.) Thus I believe that the trial court had the power to consider the matter raised by General Telephone in its post-trial motion.

The critical issue, however, is one of due process in considering whether the absent co-tortfeasors should be joined as parties and given notice and opportunity to be heard on the particular question of the validity of the loan agreement. (*Horn v. Horn*, 5 Ill. App. 2d 346, 125 N.E.2d 539.) A person is a necessary party who has such an interest in a controversy that the controversy cannot be determined without substantially affecting that interest. *National Bank of Albany Park v. S.N.H., Inc.*, 32 Ill. App. 3d 110, 336 N.E.2d 115.

While the court in *Price v. Wabash Railroad Co.*, 30 Ill. App. 2d 115, 174 N.E.2d 5, determined that the covenantee did not have to be present in order for the court to apply a payment made under a covenant not to sue to the judgment, the interest of the four contracting defendants in the case at bar is distinguishable from that of a covenantee and is such that it certainly would be affected by any decision as to the validity or invalidity of the loan-receipt agreement. In the case of a covenantee under a covenant not to sue, a payment made to the plaintiff is made once and for all with no expectation of repayment. Any decision by a court as to its effect on the damages to be paid by a co-tortfeasor does not alter this situation. However, in the present case, the decision of the court as to the validity or invalidity of the loan-receipt agreement will determine, as a practical matter, whether or not the contracting defendants will be entitled to repayment of the monies given to the plaintiff, as well as the effect of such a payment on the damages of a co-tortfeasor. In the analogous situation of an action to cancel an instrument, as a general rule, all persons materially interested in the subject of the action or claiming rights under the instrument must be made parties to an action to cancel the instrument. 6 Ill. L. & Prac. *Cancellation of Instruments* § 20 (1954); *National Bank of Albany Park v. S.N.H., Inc.*, 32 Ill. App. 3d 110, 336 N.E.2d 115.

While it might be argued that the plaintiff in this case, as a party to the loan-receipt agreement, actually represented the interests of the absent parties such that those interests received efficient protection (*Cody Trust Co. v. Hotel Clayton Co.*, 293 Ill. App. 1, 12 N.E.2d 32), still the interests of the plaintiff with particular reference to the validity of the loan-receipt agreement cannot be said to coincide with those of the absent parties. As a practical matter, whatever the decision of the court, the plaintiff does

not risk the loss of monies already received. In the case of *Hansberry v. Lee*, 311 U.S. 32, 85 L. Ed. 22, 61 S. Ct. 115, the United States Supreme Court addressed itself to the problem of allowing signatories to an agreement with potentially conflicting interests to represent other signatories:

> "Because of the dual and potentially conflicting interests of those who are putative parties to the agreement in compelling or resisting its performance, it is impossible to say, solely because they are parties to it, that any two of them are of the same class. Nor without more, and with the due regard for the protection of the rights of the absent parties which due process exacts, can some be permitted to stand in judgment for all.
>
> \* \* \* Such a selection of representatives for purposes of litigation, whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent, does not afford that protection to absent parties which due process requires." 311 U.S. 32, 44-45, 85 L. Ed. 22, 28-29, 61 S. Ct. 115.

The appellate as well as the trial court has an affirmative duty to enforce the principle of law requiring joinder of necessary parties on its own motion as soon as the absence of those parties has been brought to the court's attention, even though no objection has been raised by any party to the litigation. (*Glickauf v. Moss*, 23 Ill. App. 3d 679, 320 N.E.2d 132; *National Bank of Albany Park v. S.N.H., Inc.*, 32 Ill. App. 3d 110, 336 N.E.2d 115.) If we had found liability in this case, I would nevertheless have voted to find that the four defendants other than General Telephone are necessary parties to the determination of the issue of the validity of the loan-receipt agreement raised in General Telephone's amended post-trial motion and would have recommended that we remand this case to the trial court for rehearing of this issue with instructions to compel the joinder of these parties.