JOHN T. POPOVICH, Indiv. and as Adm'r of the Estate of David G. Popovich, Deceased, Plaintiff-Appellee, v. RAM PIPE AND SUPPLY COMPANY, INC., et al., Defendants-Appellees.—(CURTIS A. DUFIELD et al., Defendants-Appellants; RELIANCE INSURANCE COMPANY et al., Intervenors-Appellants.)

Second District    No. 78-125

Opinion filed July 23, 1979.

LINDBERG, J., dissenting in part.

Timothy T. McLaughlin, of Judge, Drew, Cipolla and Kurnik, of Park Ridge, for appellants.

Joseph P. Condon and John F. Lampe, both of Joslyn and Green, of Crystal Lake, for appellees.

Mr. JUSTICE NASH delivered the opinion of the court:

Intervenors, Reliance Insurance Company, Northwest Garage, Inc., Curtis A. Dufield and Sandra M. Newman, appeal from an order denying them leave to intervene in an action wherein the trial court adjudicated

the rights and obligations arising under a purported loan receipt agreement to which they and plaintiff were parties.

The underlying action in which this appeal arose was brought by plaintiff, John T. Popovich, administrator of the estate of David G. Popovich, deceased, his eight-year-old son, who was killed on May 22, 1973, while crossing a highway after disembarking from a school bus. Sandra M. Newman was the driver of the bus which was owned and operated by Northwest Garage. The boy was struck by a truck owned by Ram Pipe and Supply Company, Inc., which was driven by Gregory Winans. Each of these parties, together with the Crystal Lake School District, were joined as defendants in the case.

On October 16, 1975, while the case was pending for trial, plaintiff entered into an agreement with defendants Northwest, Newman and Dufield and their liability insurer, Reliance Insurance Company, which they described as a loan agreement. It essentially provided that Reliance would loan plaintiff $20,000, without interest, which was to be repaid by plaintiff out of any judgment he secured against the remaining defendants *in excess* of $20,000. On October 22, 1975, this loan arrangement was approved by the probate division of the Circuit Court of McHenry County and the funds were received by plaintiff and thereafter distributed as directed by the court. On January 26, 1976, plaintiff dismissed Northwest, Dufield and Newman as defendants in the case, without prejudice, and in the subsequent trial against the remaining defendants the jury found Winans and Ram Pipe and Supply Company not guilty, but returned a verdict in the sum of $35,000 in favor of plaintiff and against defendant Crystal Lake School District.

On December 8, 1976, Crystal Lake filed its post-trial motion in which it sought, among other things, the construction of the loan agreement as a covenant not to sue and the corresponding reduction of the judgment against it that determination would require. (See *Price v. Wabash R.R. Co.* (1961), 30 Ill. App. 2d 115, 174 N.E.2d 5.) Notice of this motion was not given to Reliance Insurance Company or its insureds, who had been party-defendants until their dismissal by plaintiff in January 1976, and they were not informed of the motion before it was decided by the court. On July 12, 1977, the trial court, as requested by Crystal Lake School District, vacated the $35,000 judgment which had been entered on the verdict in favor of plaintiff and, in its stead, entered judgment in the amount of $15,000. The basis for the reduction of the judgment was a finding by the trial court that the loan receipt agreement was in fact a covenant not to sue and therefore required that the sum received by plaintiff through that means be set off against the verdict ultimately returned against defendant.

On August 5, 1977, plaintiff sought reconsideration of the order and

Reliance Insurance Company, having by then learned of it, filed a petition for leave to intervene on its own behalf and on behalf of its insureds Northwest Garage, Inc., Curtis A. Dufield and Sandra Newman. The intervenors sought to present their motion to vacate the judgment of July 12 and, as parties to the agreement with plaintiff, to be heard on the issue of its validity. Both plaintiff's motion for reconsideration and the intervenors' petition were denied by the trial court on December 13, 1977. Neither plaintiff, nor any of the other defendants remaining in the case after dismissal of the intervenors, sought to appeal from either the order of July 12, 1977, which construed the agreement between plaintiff and the intervenors, or the order of December 13, 1977, denying intervention. In their notice of appeal the intervenors seek review of both orders and they submit that the interests of judicial economy as well as the interest of the parties herein will best be served by our resolution of all issues in this appeal. The parties have fully argued in this court the issues relating to intervention as well as the substantive question of the construction of the loan agreement.

Crystal Lake has also filed a motion to dismiss from the appeal the issue raised by Reliance as to the validity of the trial court order of July 12, 1977. We took that motion with the case and now deny it. It is Crystal Lake's contention that the intervenors lack standing to appeal from the July 12 order, or from anything other than the denial of the petition to intervene, as they were not parties to the lawsuit on July 12, 1977, when it was entered and that this court lacks jurisdiction to consider its validity.

■■ ■ The parties agree that the applicable standard to determine whether one who is not a party has standing to appeal is whether he has a direct, immediate and substantial interest in the subject matter of the litigation which would be prejudiced by the judgment order or benefited by its reversal. (*Gibbons v. Cannaven* (1946), 393 Ill. 376, 381, 66 N.E.2d 370, 372; *In re Appointment of Special State's Attorneys* (1976), 42 Ill. App. 3d 176, 181, 356 N.E.2d 195, 198-99; *Gilmore v. Gilmore* (1975), 28 Ill. App. 3d 36, 42, 328 N.E.2d 562, 567.) If the loan agreement entered into between the intervenors and plaintiff had been left intact by the trial court, then Reliance would have been entitled to repayment of $15,000 from the verdict of $35,000 returned by the jury against Crystal Lake and plaintiff would be left with a total of $40,000, *i.e.*, $20,000 received pursuant to the loan agreement and the $20,000 balance remaining from the judgment. After the court construed the agreement to be a covenant not to sue and set off the $20,000 loan made to plaintiff against the verdict, however, the relationships of the parties were drastically changed. Crystal Lake's judgment obligation was then reduced from $35,000 to $15,000; plaintiff was no longer required to repay any part of the loan received from Reliance (as the judgment was reduced below $20,000) and

Reliance was deprived of its contractual right to repayment of $15,000 from the verdict recovered by the plaintiff. Under this construction plaintiff would then be left with the total sum of $35,000: $20,000 received from Reliance under the loan agreement and $15,000 remaining as the judgment. As they were obviously materially affected by the July 12 order intervenors have standing to seek its review although not parties to the proceeding when the order was entered.

■■ Defendants' further contention that the petition to intervene presented after judgment was properly denied because it was not timely as is required by section 26.1(1)(c) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 26.1(1)(c)) is without merit. While it is true that the intervenors had knowledge of the pending action originally brought against them and other defendants, they only became necessary parties, or had any further interest in it after their dismissal, when defendants' post-trial motion put in issue the intervenors' agreement with plaintiff. They then promptly sought to intervene and should have been permitted to do so. *Safeway Insurance Co. v. Harvey* (1976), 36 Ill. App. 3d 388, 396, 343 N.E.2d 679, 685; see *Felty v. General Telephone Co.* (1977), 47 Ill. App. 3d 427, 362 N.E.2d 43, *rev'd sub nom Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 374 N.E.2d 203.

■■ In addition, intervenors were necessary parties to the proceedings in which the trial court interpreted and, in effect, cancelled their agreement with plaintiff. (*Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 156, 362 N.E.2d 382, 386.) Basic notions of due process require that all parties whose interest will be materially affected be before the court to present their position and it is error for a court to adjudicate the merits of a cause without jurisdiction of indispensable parties as are intervenors in this case. (*Safeway*, 36 Ill. App. 3d 388, 392, 343 N.E.2d 679, 682; *Glickauf v. Moss* (1974), 23 Ill. App. 3d 679, 683, 320 N.E.2d 132, 135-36.) The requirement of joinder applies to both trial and appellate courts which have a duty to enforce this principle of law *sua sponte* when it is brought to their attention. *National Bank v. S.N.H., Inc.* (1975), 32 Ill. App. 3d 110, 121, 336 N.E.2d 115, 123-24.

In this circumstance we reverse the order of the trial court which denied intervention by these necessary parties and, pursuant to the powers granted by Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1975, ch. 110A, par. 366(a)(5)), the petition to intervene is herewith allowed. As all matters necessary for our review of the issue of the validity of the loan agreement are in the record and have been argued by all interested parties, we will undertake to do so. See *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.

The use of loan receipt agreements in Illinois was first discussed by this court in *Reese v. Chicago Burlington & Quincy R.R. Co.* (1972), 5 Ill.

App. 3d 450, 283 N.E.2d 517, *aff'd* (1973), 55 Ill. 2d 356, 303 N.E.2d 382. There plaintiff had brought an action for personal injuries against the defendant railroad and the Koehring Company, as joint tort-feasors, and prior to trial plaintiff and defendant railroad entered into a loan agreement. It provided that the railroad would loan plaintiff $57,500, without interest, to be repaid from any judgment plaintiff obtained against defendant Koehring and need not be repaid at all in the event Koehring was found not liable after trial. Defendant railroad was then dismissed from the case without prejudice and after the ensuing trial judgment was entered against Koehring for $149,000. The trial court determined that the loan receipt agreement was actually a covenant not to sue, however, and reduced the judgment by the amount of the loan. On appeal, Justice Seidenfeld noted that as the loan agreement did not release the railroad from liability nor had plaintiff agreed to withhold suit against it that effect should be given to its plain terms. This conclusion was sustained by a majority of the supreme court, which determined that a loan agreement is a device which should be approved as it has the salutory effect of fostering settlements and simplifying complex litigation.

Since *Reese* the use of loan receipts as an alternate method of settlement between a plaintiff and one or more defendants rather than by use of a release or a covenant not to sue has often been approved by reviewing courts and has also been subject to much comment (see *Skinner v. Reed-Prentice Division Package Machinery Co.* (1978), 70 Ill. 2d 1, 12, 374 N.E.2d 437, 441-42, *cert. denied sub nom. Hinckley Plastic, Inc. v. Reed-Prentice Division Package Machinery Co.* (1978), 436 U.S. 946, 56 L. Ed. 2d 787, 98 S. Ct. 2849). In its latest consideration of the issue, however, our supreme court noted that the use of loan agreements is not unlimited. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.) There a purported loan receipt agreement entered into between plaintiff and one of the defendants after the trial court judgment, but before its collection from any of the defendants, was declared to be void. The court held that the use of loan agreements is proper only where judgment has not been reached. (*Kerns*, 76 Ill. 2d 154, 170, 390 N.E.2d 859, 867.) The supreme court had also restricted the use of loan agreements in earlier cases. In *Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 337 N.E.2d 23, *cert. denied sub nom. Gatto v. Calumet Flexicore Corp.* (1976), 425 U.S. 936, 48 L. Ed. 2d 178, 96 S. Ct. 1669, it determined that a loan agreement which had been entered into during trial but not disclosed until appeal was invalid as the safeguards afforded other defendants as set out in *Reese*, 55 Ill. 2d 356, 364, 303 N.E.2d 382, 387, could not be utilized by them if the loan agreement was kept secret. Again, in *Harris v. Algonquin Ready Mix, Inc.* (1974), 59 Ill. 2d 445, 322 N.E.2d 58, the court invalidated a loan agreement entered into between plaintiff and one defendant after the appellate court decision but before the supreme court granted leave

to appeal. In the circumstances of that case the agreement was found by the court to be equivalent to an assignment of a personal injury judgment on appeal.

◼ The loan agreement we consider in the present case also fails to meet the *Reese* standards and is invalid. It seems apparent that in *Reese* the parties intended to effect a valid loan rather than an absolute payment to plaintiff. There plaintiff was required to repay the loan from any judgment he obtained against the remaining defendants; here, however, plaintiff was obligated to repay the $20,000 received from Reliance only from that portion of a judgment he obtained against the remaining defendants which exceeded the amount of the "loan." We have found no case from this or another jurisdiction which has considered a loan agreement in the form seen here. In our view, however, a basic element necessary to a valid loan agreement is that the sum received by the injured party by his agreement with a potential joint tort-feasor must be a true loan, repayable from any judgment collected from other tort-feasors, rather than a form of absolute payment. (See Annot., 62 A.L.R.3d 1111, 1135 (1975).) In this case plaintiff had no obligation to repay the $20,000 from *any* judgment recovered from the other defendants, as seen in *Reese*, but only to repay it from any recovery in excess of that sum. It follows that the amount plaintiff received from the intervenors was not a loan.

◼◼ Nor do we believe the agreement we consider here can correctly be characterized as either a release or a covenant not to sue; intervenors were dismissed before trial without prejudice and plaintiff did not agree to forego subsequent action against them. As it may not be enforced as a loan agreement, however, we find the money advanced to plaintiff pursuant to the agreement should be applied in partial satisfaction of plaintiff's judgment. *Kerns*, 76 Ill. 2d 154, 171, 390 N.E.2d 859, 867.

For these reasons, the judgment of the Circuit Court of McHenry County is reversed and this cause is remanded with directions that the judgment in favor of plaintiff and against defendant Crystal Lake School District be reinstated and that the $20,000 payment received by plaintiff from intervenors be applied in partial satisfaction of that judgment.

Reversed and remanded with directions.

RECHENMACHER, J., concurs.

Mr. JUSTICE LINDBERG, dissenting in part:

I concur in that portion of the majority opinion granting the petition to intervene. I also agree that the use of loan receipt agreements is not unlimited. However I am unable to find anything improper in the loan agreement at issue here. This agreement was not kept secret (*Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513, 337 N.E.2d 23, *cert. denied sub*

*nom. Gatto v. Calumet Flexicore Corp.* (1976), 425 U.S. 936, 48 L. Ed. 2d 178, 96 S. Ct. 1669), nor was it entered into after the judgment below (*Kerns v. Engelke* (1979), 76 Ill. 2d 154; *Harris v. Algonquin Ready Mix* (1974), 59 Ill. 2d 445, 332 N.E.2d 58).

As the following chart based on varying jury verdicts indicates, there is very little difference in effect between the "in excess of $20,000" term employed here and the agreement approved in *Reese*:

| Hypothetical jury verdict of: | $0 or no liability | | $10,000 | | $35,000 | | $50,000 | |
|---|---|---|---|---|---|---|---|---|
| | Loan agreement of $20,000 as approved in Reese | "In Excess of $20,000" agreement as in Popovich | Reese | Popovich | Reese | Popovich | Reese | Popovich |
| liability of defendant Crystal Lake | 0 | 0 | $10,000 | $10,000 | $35,000 | $35,000 | $50,000 | $50,000 |
| Amount paid by Reliance after loan repayment | $20,000 | $20,000 | $10,000 | $20,000 | 0 | $5,000 | 0 | 0 |
| Total paid to plaintiff | $20,000 | $20,000 | $20,000 | $30,000 | $35,000 | $40,000 | $50,000 | $50,000 |

In sum, if there is either no liability or $40,000 or more liability there is no difference in result between a *Reese* and *Popovich* type of agreement. If the verdict is within the range between these limits, the plaintiff stands to recover a greater amount under the type of agreement at issue here. However, these additional funds come from Reliance Insurance Company—the party that agreed to these terms—and not from defendant Crystal Lake. Thus if the purpose of a loan agreement is to provide a quick and sure source of funds for the plaintiff while at the same time providing some protections for the remaining defendant(s), this purpose is well served by the agreement in question. Also I do not see how a *Reese* type agreement is any less an absolute payment than the one here. As the above chart indicates, there will be cases under both types of agreements that funds received by the plaintiff will not be repaid. The only difference is that in some cases the amount of repayment will differ according to the terms of the agreement.

For the foregoing reasons I respectfully dissent from that portion of the majority opinion that calls for applying the $20,000 payment as partial satisfaction of the $35,000 judgment.