THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, Plaintiff-Appellee, *v.* ILLINOIS PROTESTANT CHILDREN'S HOME, INC., *et al.*, Defendants.— (CHICAGO PARK DISTRICT, Intervenor-Appellee; DORTHY WARE, Intervenor-Appellant.)

First District (2nd Division)    No. 80-33

Opinion filed April 7, 1981.—Rehearing denied May 19, 1981.

Law Offices of Rufus Cook, Ltd., of Chicago (Rufus Cook, of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellee William J. Scott.

Foran, Wiss & Schultz, of Chicago (Richard A. Devine and Stephen P. Sinnott, of counsel), for appellee Chicago Park District.

Mr. JUSTICE PERLIN delivered the opinion of the court:

This case arises out of a dispute regarding the propriety of an order entered on January 9, 1976, by Cook County Circuit Court Judge Samuel B. Epstein authorizing the conveyance of property owned by a dissolved not-for-profit corporation to the Chicago Park District. As the holder of a tax certificate of sale issued on June 10, 1976, Dorothy Ware, on May 29, 1979, filed a petition in the trial court to intervene for the purpose of presenting a petition attacking as void Judge Epstein's order of January 9, 1976. The Attorney General's office and the Chicago Park District moved to dismiss Ware's petitions. Judge Holzer denied both petitions, and Ware now appeals, presenting the following issues for our review: (1) whether Ware should have been allowed to intervene in the proceedings before Judge Holzer; and (2) whether Judge Epstein's order authorizing a conveyance of the property was void. For the reasons hereinafter set forth we affirm the trial court's order denying Ware's petition to intervene.

The property which is the subject of this litigation is the parcel of land commonly known as 5017 South Ellis Avenue in the city of Chicago. In 1947 the Loeb family, by quitclaim deed, conveyed the property to the Illinois Protestant Children's Home, Inc. (the Home) "for consideration of the sum of $10 and other good and valuable consideration." The Home was a charitable corporation whose stated purpose was to provide a residence for dependent Protestant children. On July 3, 1967, the Home by its president, Florence J. Budd, and its secretary, Nina Ely, conveyed the property to Mrs. Budd. She, in turn, transferred the property to "Flobudd Antiques, Inc." on July 14, 1967. On the same day "Flobudd" through its president, Mrs. Budd, and its secretary, executed a trust deed to Chicago Title & Trust to secure a note for $50,000 to the Gibraltar Corporation. As a result of these transactions the Illinois Attorney General's Office brought a three-count complaint against the Home on April 2, 1970, alleging that the Home was operating in violation of the Charitable Trust Act (Ill. Rev. Stat. 1969, ch. 14, par. 51 *et seq.*), the charitable solicitations act (Ill. Rev. Stat. 1969, ch. 23, par. 5101 *et seq.*) and the General Not For Profit Corporation Act (Ill. Rev. Stat. 1969, ch. 32, par. 163a *et seq.*).

The relief requested by the Attorney General included, *inter alia*, revocation of the Home's corporate charter; setting aside the conveyances of the property and an accounting of the proceeds therefrom; the appointment of a receiver to seize and liquidate the assets of the Home;

and a distribution of the assets, including the property to "other organizations engaged in activities substantially similar to the stated purpose of the said Home, according to the doctrine of *cy pres* as the Court may direct."

In a decree entered March 29, 1972, Judge Epstein set aside the quitclaim, warranty and trust deeds of July 1967 and ordered Mrs. Budd and "Flobudd Antiques, Inc." to reconvey their respective claims and interests in the property to the Home. Mrs. Budd was also ordered to discharge the mortgage indebtedness. Because many of the Home's records were destroyed in a fire in 1970, the Attorney General's request for an accounting of proceeds and contributions was denied. The court reserved the matters of the disposition of the property of the Home and the dissolution of its corporate charter. In an independent suit brought by the Attorney General's office, however, Judge Covelli dissolved the Home's charter on November 16, 1972, for failure to file the annual reports required by the "General Not For Profit Corporation Act."

Mrs. Budd never complied with the orders entered on March 29, 1972. Judge Epstein therefore ordered a sheriff's deed to be executed by July 31, 1973, conveying the property back to the Home. Both before and after this deed was recorded, Judge Epstein attempted to find a suitable charity to accept the property. On December 29, 1975, the Chicago Park District petitioned Judge Epstein to convey the property to the Park District and to enjoin the city of Chicago from proceeding with an action to foreclose on a $4,500 demolition lien it had acquired in 1972.[1]

On January 9, 1976, Judge Epstein authorized the Park District to accept conveyance of the land and ordered the sheriff of Cook County to execute and deliver to the Chicago Park District a deed in fee simple for the property. In paragraph 8 of the decree Judge Epstein found that there was "no just reason for delaying enforcement or appeal of this decree." For reasons which are not apparent from the record, a sheriff's deed conveying this land was not executed and delivered to the Park District until October 13, 1978.

On June 10, 1976, six months *after* Judge Epstein ordered the conveyance, Phoenix Realty, Dorothy Ware's assignor, obtained a tax delinquency certificate of purchase for the property located at 5017 South Ellis. Phoenix bid $201 for $43,468.23 in delinquent taxes assessed for the years 1947-1949 and 1966-1974. Phoenix assigned its interest in the certificate to Ware on August 19, 1976.

On October 21, 1977, Ware, as a holder of a tax certificate of sale, petitioned Judge Dempsey of the tax division to appoint her receiver to prevent waste to the property. Notice of this petition was served on the Chicago Park District which appeared through its attorney, Leslie Liss,

---

[1] The residence on the property was demolished by the city following the 1970 fire.

before Judge Dempsey on October 27, 1977. Liss represented to the court that the Park District was not interested in the subject property, whereupon the court granted Ware's petition. Late in 1977 the city of Chicago tried to foreclose on its demolition lien and scheduled a sale of the property for November 16, 1977. Ware offered to pay the city the sum of the lien and thereby redeem the property from the foreclosure decree, but the city refused to accept her payment. Ware then obtained an emergency *ex parte* order restraining the city from proceeding with the sale. The order provided that the sale, if held, would not affect the rights of the certificate holder. Although the order was entered before the sale was scheduled to take place, a copy of the order was not served until after a sale had taken place. On May 15, 1978, Judge Wosik set the sale aside. The sale was "held for naught" and "all parties hereto be put in status quo as of November 14, 1977." The city was ordered to accept Ware's payment of the lien. Three days after this order was entered, Ware paid the corporation counsel's office $6,070.28 for release of the city's levy.

On June 7, 1978, Ware filed a petition for a tax deed and had notices served on all known interested parties. The Chicago Park District was not served. The redemption period for the property expired on September 29, 1978, and four days later Ware appeared before Judge Dempsey for an order directing issuance of a tax deed. The case was continued from time to time until it came before Judge Staniec on October 17, 1978. On that date Mr. Liss from the Park District appeared and requested leave to intervene as an interested party. Liss presented the sheriff's deed, dated October 13, 1978, and stated that the Park District had never received notice of Ware's petition for a tax deed. Ware contended that the Park District was not entitled to notice as a known interested party because of Liss' previous representations to Judge Dempsey when Ware's petition for a receivership was being considered.

A hearing was held before Judge Dempsey on November 28, 1978, at which both Mr. Cook, Ware's counsel, and Mr. Liss testified. Ware also filed a memorandum of law in support of her position that Judge Epstein's decree of January 9, 1976, did not, in and of itself, pass title to the Chicago Park District, that the decree was void and that the Park District had waived and was estopped from raising the defense of lack of notice to an interested known party to Ware's petition for a tax deed.

On April 20, 1979, Judge Dempsey found that Judge Epstein's decree "by its own terms required a conveyance of the premises to be made and authorized acceptance of the conveyance; that the decree did not purport to vest and did not vest title to the premises in the Chicago Park District"; and that "the Sheriff's Deed called for by the decree was not executed until October 13, 1978, on which date it was delivered to and accepted by the Chicago Park District; the Park District became owner of the premises

on October 13, 1978, subsequent to the expiration of the period of recemption." Although Judge Dempsey criticized the conduct of the attorneys of the Chicago Park District, he found that their conduct was "not sufficient as a matter of law to constitute a waiver by the Chicago Park District of its rights in the premises in question and of its rights [as a known interested party] to notice [of the petition for a tax deed] under the Constitution and statutes." Ware "had actual knowledge of the interest of the Chicago Park District by reason of the letter of opinion attached to its application for a tax deed and had a convenient means of verifying the true facts as to its continuing interest by inquiry of the Commissioners or other officers of the District." For that reason Ware should have served the Park District with notice of her petition for a tax deed. Judge Dempsey found that the facts did not warrant the application of the doctrine of estoppel against the Park District.

With respect to Ware's claim that Judge Epstein's decree was void, Judge Dempsey ruled that "whether the decree represented a proper application of the doctrine of *cy pres* is not subject to collateral attack in this proceeding as the Chancery Court clearly had jurisdiction of the subject matter and the parties and the decree was not appealed." Judge Dempsey ordered the Park District to reimburse Ware for moneys she expended at the tax sale and for satisfaction of the demolition lien. Upon payment of such sums, Ware's petition for a tax deed was denied.

After Judge Dempsey ruled that Judge Epstein's order was not void and could not be attacked collaterally, Ware filed a petition to intervene before Judge Holzer on May 29, 1979. By reason of her status as a holder of the certificate, Ware claimed that she was "by law a party interested in the property, and is so situated as to be adversely affected by the Order of January 9, 1976," and, therefore, was "entitled as of right to intervene in this proceeding." Ware requested leave of court to intervene and also filed a "SECTION 72 PETITION TO VACATE ORDER ENTERED JANUARY 9, 1976." In her section 72 petition[2] Ware asserted that Judge Epstein "lacked authority and thus lacked jurisdiction to order the conveyance of the subject property" and that the court "lacked the power and thus lacked jurisdiction to authorize the CHICAGO PARK DISTRICT to accept such a conveyance."

On July 11, 1979, the Attorney General's office and the Chicago Park District filed a joint motion to strike and dismiss Ware's petitions alleging that the order of January 9, 1976, was a valid exercise of the court's

---

[2] Technically, as the Park District points out in its brief, Ware's "attempt to vacate the order of January 9, 1976 is not a section 72 petition but a common law motion to vacate an allegedly void order. Such a motion is recognized but not governed by section 72(6)." In *In re Marriage of Gryka* (1980), 90 Ill. App. 3d 443, 446, 413 N.E.2d 154, the court noted that "a void judgment is subject to attack at any time either in a direct or a collateral proceeding [citations], and such an attack is not considered as being brought under section 72."

"common law, statutory, and equitable powers"; that Ware's section 72 petition was not filed within the two years required by law; that Ware failed to exercise due diligence; that Ware's petition to intervene was not timely filed; and that Ware was "not so situated" at the time the order was entered "to be adversely affected by a distribution of property subject to the disposition of the court."

On August 17, 1979, Judge Holzer denied Ware's petition to intervene and to vacate the order entered January 9, 1976. On September 7, 1979 Ware filed a petition requesting, *inter alia,* the court to vacate its order denying her petitions. That petition was denied on November 27, 1979. On December 21, 1979, Ware filed a notice of appeal from the orders entered on August 17, 1979, and November 27, 1979.

In his final order of August 17, 1979, Judge Holzer stated that the "threshold question before this court is whether Dorothy Ware has a right to intervene in this cause. Only if Dorothy Ware is a valid intervenor may the Court entertain her Section 72 Petition to vacate Judge Epstein's Court Order of January 9, 1976."

The intervention statute provides, in relevant part:

"(1) Upon timely application anyone shall be permitted as of right to intervene in an action: (a) when a statute confers an unconditional right to intervene; or (b) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action; or (c) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court or an officer thereof.

(2) Upon timely application anyone may in the discretion of the court be permitted to intervene in an action: (a) when a statute confers a conditional right to intervene, or (b) when an applicant's claim or defense and the main action have a question of law or fact in common." Ill. Rev. Stat. 1977, ch. 110, par. 26.1(1), (2).

■■ As the court observed in *University Square, Ltd. v. City of Chicago* (1979), 73 Ill. App. 3d 872, 878, 392 N.E.2d 136, "the trial court cannot act to fulfill the purpose of the intervention statute without the threshold determination that its requirements are met." Ware's claim in her section 72 petition that Judge Epstein's order of January 9, 1976, exceeded the court's jurisdiction does not afford a right to intervene. At best it states a matter which Ware could raise if permitted to do so. *Seger v. County of Du Page* (1978), 58 Ill. App. 3d 858, 861-62, 374 N.E.2d 1099; see also *Crown Financial Corp. v. Winthrop Lawrence Corp.* (2d Cir. 1976), 531 F.2d 76.

In the petition submitted to Judge Holzer, Ware asserted a right to intervene cognizable under clause (c) of subsection (1) of the statute. On

appeal she claims that she had a right to intervene not only under that clause but also under clauses (a) and (b). Ware argues further that she met the requirements for permissive intervention allowed by subsection (2).

■■ We conclude, however, that intervention would have been inappropriate under any of the grounds specified in the statute. The subject matter of the original litigation in which Ware sought to intervene was a petition by the Chicago Park District to have the property in question conveyed to it for the use and enjoyment of the public. Neither Ware nor her assignor had any interest whatever in the litigation during its pendency. Ware could not have been named as a party to the original litigation, and a complete determination of the controversy in that suit was possible without her presence. Whatever interest Ware acquired in the subject matter of the original suit was the result of her purchase of the tax certificate of sale from Phoenix Realty, which obtained the certificate six months *after* Judge Epstein ordered the property conveyed to the Chicago Park District. Neither the order of conveyance nor the Park District's interest in the property was concealed from either Phoenix Realty when it purchased the tax certificate on June 10, 1976, nor from Ware when she acquired the certificate on August 19, 1976.

■■ Intervention is not an independent proceeding but is an ancillary and supplemental one which must be in subordination to the main proceeding. (*Ackmann v. Clayton* (1976), 39 Ill. App. 3d 1013, 1015, 350 N.E.2d 824.)[3] As in *Ackmann* there was nothing in the record of this case which suggested that Ware had any interest which had been prejudiced during the pendency of the litigation. The only prejudice to Ware's interest arose after her purchase of Phoenix' tax certificate. This serves to distinguish the principal case on which Ware relies, *In re Application of County Collector* (1977), 53 Ill. App. 3d 120, 368 N.E.2d 929. There the court held that the intervenor should have been joined in the original suit as an indispensable party. In the instant case Ware had no recognizable or enforceable right in the subject matter of the litigation (*Ackmann*) and could not have been named as a party to it.

Intervention "may be allowed after judgment where it is necessary to protect the intervenor's rights." (*Anundson v. City of Chicago* (1970), 44 Ill. 2d 491, 497, 256 N.E.2d 1.) In each case where post-judgment intervention has been permitted, however, the interest of the intervenor existed at the time the judgment was entered. In *City of Chicago v. Zik* (1965), 63 Ill. App. 2d 445, 211 N.E.2d 545, the intervenors held leasehold interests at the time of the litigation which sought demolition of the

---

[3] "* * * since intervention contemplates an existing suit in a court of competent jurisdiction and because intervention is ancillary to the main cause of action intervention will not be permitted to breathe life into a 'nonexistent' lawsuit." [Citations]. *Fuller v. Volk* (3d Cir. 1965), 351 F.2d 323, 328.

property. In *Avery v. Garbutt* (1974), 19 Ill. App. 3d 1001, 313 N.E.2d 724, the intervenors were police sergeants when a declaratory judgment was entered which would have affected their promotion rights. In *Standard Bank & Trust v. Village of Oak Lawn* (1978), 61 Ill. App. 3d 174, 377 N.E.2d 1152, and *City of Lockport v. County Board of School Trustees* (1971), 2 Ill. App. 3d 970, 276 N.E.2d 13, the intervenors were property owners at the time their respective municipalities were engaged in litigation regarding zoning ordinances. In *Shlensky v. South Parkway Building Corp.* (1963), 44 Ill. App. 2d 135, 194 N.E.2d 35, the intervenor was a shareholder in the corporation which was the subject of the litigation. In *Popovich v. Ram Pipe & Supply Co.* (1979), 74 Ill. App. 3d 343, 392 N.E.2d 954, *aff'd* (1980), 82 Ill. 2d 203, 412 N.E.2d 518, the intervenors were parties to a loan receipt agreement which, without their knowledge, was later interpreted by the trial court as a covenant not to sue. And in the case cited by Ware, *In re Application of County Collector,* the intervenor was a guarantor of a mortgage of property subject to a tax sale.

Although *Ackmann* appears to be the only Illinois case which has considered the propriety of post-judgment intervention by a party whose interest was acquired after the original litigation had been concluded, several federal courts have reached the same result in interpreting Rule 24 of the Federal Rules of Civil Procedure. (See *Toles v. United States* (10th Cir. 1967), 371 F.2d 784, 786; *Firebird Society, Inc. v. New Haven Board of Fire Commissioners* (1975), 66 F.R.D. 457, *aff'd mem. op.* (2d Cir. 1975), 515 F.2d 504; *Crown Financial Corp. v. Winthrop Lawrence Corp.* (2d Cir. 1976), 531 F.2d 76.) These cases are instructive because our own intervention statute is modeled after the Federal rule so that "the interpretation of Rule 24 is highly relevant." *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 381.

Subsection (1)(c) of the intervention statute provides that on timely application anyone may intervene in an action as of right when "the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody or subject to the control or disposition of the court of an officer thereof." On January 9, 1976, Judge Epstein ordered the sheriff to execute a deed conveying the subject property to the Chicago Park District. That deed was not executed and delivered to the Park District until October 13, 1978. As of that date, Ware's petition for a tax deed was pending in the circuit court, the redemption period having expired. Ware now contends that she should have been allowed to intervene under 26.1(1)(c) because the property was then in the custody or subject to the control or disposition of an officer of the court (*i.e.*, the sheriff).

This contention overlooks the fact that when Judge Epstein ordered

the sheriff to execute a deed, he expressly found that there was "no just reason for delaying enforcement or appeal of this decree." Because of this finding, the decree was not subject to revision after the time for appeal expired. (Rule 304(a)) (Ill. Rev. Stat. 1975, ch. 110A, par. 304(a).) In his decree Judge Epstein did retain "jurisdiction of the subject matter of this cause and of all the parties [t]hereto." That did not affect the finality of the decree entered. "As to undisposed of matters, the jurisdiction of the court would continue until the whole matter is disposed of, although, of course, further proceedings would not be allowed to change or modify in any way the final decree theretofore entered." (*Eggers v. Adler* (1928), 248 Ill. App. 118, 125-26.) That further action by the court may have been necessary to *enforce* the provisions of the decree did not render the decree entered nonfinal. (*Totten v. Totten* (1921), 299 Ill. 43, 45, 132 N.E. 277; *Fiore v. City of Highland Park* (1968), 93 Ill. App. 2d 24, 31, 235 N.E.2d 23.) It was the original equity decree of January 9, 1976, which Ware has challenged. When that decree was filed, Ware had no interest in the subject property and therefore could not intervene.

Clause (a) of subsection (1) allows intervention in an action "where a statute confers an unconditional right to intervene." Ware asserts that as the holder of a tax certificate of sale she had, by virtue of section 253(a) of the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, par. 734a) an absolute and unconditional right to intervene in any action to demolish improvements on the property. Section 253(a) provides, in pertinent part, that "[t]he holder of the certificate of purchase shall be made a party to any action or proceeding to demolish or destroy improvements on real property where such property has been sold for failure to pay taxes upon such property and the period of redemption has not expired." Clearly, under clause (a) of subsection (1) of the intervention statute, Ware had the right to intervene in any demolition action brought *after* she obtained her tax certificate. On the basis of that right, Ware contends that the "purchaser has the right to intervene in proceedings purporting to dispose of the fee * * *."

This interpretation of the Revenue Act is untenable. Section 253(a) simply "requires that tax certificate holders be named parties to demolition actions affecting property represented by their certificates." (*Schwartz v. City of Chicago* (1974), 21 Ill. App. 3d 84, 87, 315 N.E.2d 215.) It does not confer upon a tax certificate holder a right to intervene in *all* proceedings affecting the property. Even if Ware's interpretation of section 253(a) were reasonable, of necessity the right to intervene could not exist until after "such property had been sold for failure to pay taxes * * *." Judge Epstein's order was entered six months *before* the tax sale was held, at which time neither Ware nor her assignor had acquired any interest in the subject property.

Entirely apart from the foregoing considerations we find that there is another reason to affirm the trial court's order denying Ware's petition to intervene. Post-judgment intervention has been limited to those situations in which it is the *only* way to protect the rights of the intervenor. (*Standard Bank & Trust Co. v. Village of Oak Lawn* (1978), 61 Ill. App. 3d 174, 178; *Moore v. McDaniel* (1977), 48 Ill. App. 3d 152, 159, 362 N.E.2d 382; *Avery v. Garbutt*, at 1003; *County of Cook v. Triangle Sign Co.* (1963), 40 Ill. App. 2d 202, 214-15 , 189 N.E.2d 25; *City of Chicago v. Zik* (1965), 63 Ill. App. 2d 445, 448.) The Federal cases interpreting Rule 24 are in accord. See *Alaniz v. California Processors, Inc.* (N.D. Cal. 1976), 73 F.R.D. 289, *aff'd sub nom. Alaniz v. Tillie Lewis Foods* (9th Cir. 1978), 572 F.2d 657; *Pellegrino v. Nesbit* (9th Cir. 1953), 203 F.2d 463, 465.

Here intervention was not the only way to protect the rights of the intervenor. The thrust of Ware's section 72 petition before Judge Holzer was that Judge Epstein's order of January 9, 1976, was void as an act beyond the jurisdiction of the court. As we have previously noted, this contention has been raised in Ware's petition for a tax deed before Judge Dempsey. Although initially this argument was rejected by Judge Dempsey, nevertheless Ware was not denied a forum in which to present her claim.

In our judgment Ware's petition to intervene was properly denied. This determination makes it unnecessary to decide Ware's contention that the order of conveyance was void. See *Ackmann v. Clayton* (1976), 39 Ill. App. 3d 1013, 1015; *Alaniz v. Tillie Lewis Foods* (9th Cir. 1978), 572 F.2d 657, 659; *Crown Financial Corp. v. Winthrop Lawrence Corp.* (2d Cir. 1976), 531 F.2d 76, 77.

For the reasons hereinbefore set out, the order of the circuit court of Cook County denying appellant's petition to intervene is affirmed.

Affirmed.

HARTMAN, P. J., and DOWNING, J., concur.