**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 250068-U

Order filed December 5, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| VIVEK BEDI, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Du Page County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-25-0068 |
| | ) | Circuit No. 22-LA-682 |
| PREMIUM HEALTHCARE SOLUTIONS, | ) | |
| LLC, and RAJEEV BATRA, | ) | |
| | ) | |
| Defendants-Appellees, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| MEDLEGAL SOLUTIONS, INC. d/b/a | ) | |
| ATTICUS MEDICAL BILLING, | ) | Honorable |
| | ) | David E. Schwartz, |
| Intervenor-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Hettel and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The trial court did not abuse its discretion in denying the applicant's petition to intervene in state court pursuant to section 2-408(a)(2) of the Code to vacate a *nunc pro tunc* order.  Affirmed.

¶ 2        In 2022, plaintiff-appellee Vivek Bedi obtained a $1.58 million stipulated judgment in state court resolving Bedi's action in replevin against defendants-appellees Rajeev Batra and a company that he owned, Premium Healthcare Solutions, LLC (Premium). However, Premium had been spelled as "Premier," in all pleadings, the stipulated judgment, and a turnover order. In 2024, intervenor-appellant, MedLegal Solutions, Inc. (MedLegal), obtained a $475,954 judgment in federal court against Premium. Bedi petitioned to intervene in the federal case, asserting an adverse claim based on its 2022 judgment and resulting lien against Premium. MedLegal responded that Bedi did not have a lien against Premium, but against a different company, named "Prem*ier* Healthcare Solutions, LLC." (Emphasis added.) Bedi replied that he had been unaware of what was, in his view, a misnomer and simple spelling mistake, and the federal court continued the case. The next day, Bedi obtained an agreed *nunc pro tunc* order in state court, purporting to correct the spelling error of the co-defendant company from Prem*ier* to Prem*ium*.

¶ 3        Two weeks later, MedLegal petitioned to intervene as of right in state court pursuant to section 2-408(a)(2) of the Code of Civil Procedure (Code) (735 ILCS 5/2-408(a)(2) (West 2022)) to seek to vacate the *nunc pro tunc* order. The trial court denied the petition to intervene, noting that MedLegal did not have an interest in the 2022 judgment at the time it was entered and that MedLegal was able to pursue the question of lien priority in another forum, *i.e.*, federal court. MedLegal appeals, arguing that the trial court abused its discretion in denying its petition to intervene. For the reasons that follow, we affirm.

¶ 4                                        I. BACKGROUND

¶ 5                A. State Court: Bedi's Action in Replevin against Batra and Premium

¶ 6        On July 29, 2022, Bedi filed a complaint in replevin against Batra and Batra's company, Premium, in state court. Bedi and Batra are brothers-in-law. *In the complaint, judgment, charging*

2

*order, impressed lien, turnover order, and all the motions in between, the parties spelled the defendant company as "Premier" instead of Premium.* The complaint alleged that Bedi was entitled to $1.43 million, plus interest, "associated with" a promissory note dated August 1, 2019. On October 11, 2022, defendants filed an answer, admitting that Bedi was entitled to possession of the sum. The answer was signed by Batra and "Premier's" attorney, Ariel Weissberg. ("By Ariel Weissberg, One of *their* attorneys." (Emphasis added.))

¶ 7        On October 26, 2022, the trial court entered a stipulated judgment, providing:

> "Defendants having admitted that they executed and delivered to Plaintiff a promissory note dated August 1, 2019 to evidence the advance of the principal sum of $1,430,000.00 from Plaintiff to Defendants, and that the obligations evidenced through this promissory note are in default, a judgment in the amount of $1,578,097.98, representing unpaid principal and interest that accrued thereon, is entered jointly and severally against each of the Defendants, RAJEEV BATRA and Premier Healthcare Solutions, LLC, and in favor of Plaintiff, VIVEK BEDI."

¶ 8    The stipulated judgment was signed by the court. Under the court's signature, the judgment was noted as having been prepared by Weissberg.

¶ 9        On October 27, 2022, the trial court issued citations to discover the assets of debtors Batra and "Premier," each of which citation was sent to Batra's home address in Hinsdale.

¶ 10        On November 3, 2022, the trial court entered a charging order against Batra's membership interest in "Premier" pursuant to section 30-20 of the Limited Liability Company Act (805 ILCS 180/30-20 (West 2022)). It also entered a continuing impressed lien against the assets of "Premier" pursuant to section 2-1402(k-10) of the Code (735 ILCS 5/2-1402(k-10) (West 2022)). On August 15, 2024, the trial court issued a turnover order to Innovative Management Solutions, Inc., a

3

company that processed Premium's accounts, instructing it to pay the proceeds of "Premier's" accounts to Bedi until Bedi's judgment was satisfied.

¶ 11                        B. Federal Court: MedLegal's Judgment Against Premium

¶ 12        The following background relating to the federal case is drawn from MedLegal's petition to intervene in state court, including exhibits. In 2017, Premium contracted with MedLegal to manage Premium's outstanding accounts receivable. MedLegal concluded that Premium was accepting payments to which MedLegal was contractually entitled. MedLegal then filed an arbitration demand, seeking damages for breach of contract and, on July 27, 2022, the arbitration service confirmed the commencement of arbitration.

¶ 13        On January 2, 2024, the arbitrator entered a $475,954 award in favor of MedLegal. On January 18, 2024, MedLegal petitioned to confirm the arbitration award in federal court. The docket in the federal case notes that Premium is represented by Weissberg. On July 1, 2024, the federal court entered judgment on the arbitration award. On September 16, 2024, MedLegal served Premium its citation to discover assets, thereby, in its view, perfecting its lien.

¶ 14        On September 30, 2024, counsel for Bedi filed an appearance and moved to intervene in the federal case, asserting an adverse claim based on its prior judgment against Premium and holder of a resulting lien against Premium, again spelling the name "Premier."

¶ 15        On October 8, 2024, the federal court heard Bedi's petition to intervene. MedLegal responded that Bedi did not have a judgment against Premium, but against a company named "Premier." Bedi had no reply prepared for that argument and the federal court continued the matter.

¶ 16                        C. State Court: The Agreed *Nunc Pro Tunc* Order

4

¶ 17    On October 9, 2024, Bedi, Batra, and Premium obtained an agreed order to correct the name of Premium. The *nunc pro tunc* order, submitted by Weissberg and signed by the court, provided:

"THIS MATTER COMING ON TO BE HEARD on the stipulation and agreement of the parties, by their respective counsel, to correct a misnomer in the name of the Defendant, Premium Healthcare Solutions, LLC, which was noted in mutual mistake as 'Premier' Healthcare Solutions, LLC, instead of 'Premium' Healthcare Solutions, LLC ('Misnomer'); due and proper notice having been given; and the Court being duly advised in the premises;

IT IS HEREBY ORDERED as follows:

1. The caption of this case shall be changed to '*Vivek Bedi v. Premium Healthcare Solutions, LLC and Rajeev Batra*' to correct the Misnomer.

2. The Orders entered on October 25, 2022 (entering judgment), November 21, 2022 (entering charging order) and August 15, 2024 (entering turnover order) are hereby amended, *nunc pro tunc*, to the dates each of these Orders were entered substituting the name of the Defendant from Premier Healthcare Solutions, LLC to Premium Healthcare Solutions, LLC. All other decrees entered through these Orders shall remain unamended and in full force and effect, as of the date each of these Orders were entered."

¶ 18                         D. State Court: MedLegal's Petition to Intervene

¶ 19    On October 24, 2024, MedLegal petitioned to intervene as of right in state court pursuant to section 2-408(a)(2) of the Code. 735 ILCS 5/2-408(a)(2) (West 2022). Section 2-408(a)(2) permits a party to intervene as of right "when the representation of the applicant's interest by

existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action." *Id*. To obtain leave to intervene under section 408(a)(2), the applicant must present a timely application, have an interest in the pending suit, and show that the parties to the pending suit do not adequately represent its interests. *Joyce v. Explosives Technologies International*, Inc., 253 Ill. App. 3d 613, 616-617 (1993). As to timeliness, MedLegal stressed its diligence and argued that the earliest date at which it could have sought to intervene was October 9, 2024, the date upon which Bedi, Batra, and Premium obtained the *nunc pro tunc* order to establish that Bedi had a 2022 judgment against Premium. As to interest, MedLegal contended that it had an interest in vacating the *nunc pro tunc* order, because it purported to make MedLegal's 2024 lien against Premium secondary to Bedi's alleged 2022 lien against Premium. As to inadequate representation by existing parties, MedLegal noted that the existing parties had agreed to a *nunc pro tunc* order that arguably made Bedi's lien against Premium senior to MedLegal's lien against Premium—an adverse interest.

¶ 20        MedLegal pleaded that, if it were allowed to intervene, it would seek to vacate the October 9, 2024, *nunc pro tunc* order. MedLegal quoted *Deutsche Bank National Trust Co. v. Ivicic*, 2015 IL App (2d) 140970, ¶ 17:

> "The purpose of a *nunc pro tunc* order is to supply some omission in the record of an order which was really made but omitted from the record. It does not alter the actual judgment of the court. Rather, it merely corrects inadvertent omissions from the judgment order, and should not be entered if the omission is the result of either a deliberate decision by the judge or relates to an issue that was not presented to the judge. Upon a motion for a *nunc pro tunc* order, the court is not called on to construe the judgment, but only to enter of record such judgment as was formerly rendered and not entered of record as rendered.

A *nunc pro tunc* order must be based on some note, memorandum, or memorial in the record indicating that the omission was an inadvertent clerical error. Any document in the record may serve as evidence of the inadvertent nature of the omission, including hearing transcripts, but the evidence must be definite and certain." (Internal quotations and citations omitted.) *Id.*

MedLegal set forth three arguments in favor of vacating the *nunc pro tunc* order. First, the *nunc pro tunc* order did not correct an inadvertent omission or clerical error to conform to the actual judgment. Rather, it altered the actual judgment from being against "Premier" to being against Premium. Second, the trial court should not have accepted the simple misnomer theory because it was not supported by "clear and definite" evidence. See *id.* Rather, the trial court accepted the misnomer theory on the stipulation of the parties (by their attorneys). However, the evidence on file did not support such a theory—"from Batra's complaint and [']Premier's['] answer, through the [turnover] order (and everything in between), the company defendant is identified as 'Premier Healthcare Solutions.' " Also, "although multiple pleadings and filings refer to a supposed August 1, 2019[,] promissory note [between Premier or Premium as the maker and Bedi as the payee], no promissory note was ever filed in the record." Third, if the court had not corrected a clerical error to conform to the actual 2022 judgment, and had instead altered the 2022 judgment more than 30 days out, it was without jurisdiction to do so. See *Peraino v. County of Winnebago*, 2018 IL App (2d) 170368, ¶ 16. MedLegal noted that it was separately pursuing the seniority of its lien in the federal case, and it did not waive its right to do so by filing the instant petition to intervene.

¶ 21 On December 3, 2024, Bedi responded to the petition to intervene. He argued that MedLegal did not have "standing" to intervene because it had no direct interest in the claims underlying the litigation. According to Bedi, naming "Premier" as a defendant in 2022 was a

clerical error. Premier was "an uninvolved third-party corporation \*\*\* that for several years had a $1.5 [million] judgment mistakenly entered against it without notice or an opportunity to be heard." "None of the parties ha[ve] ever done business with Premier, and [Bedi] has certainly never loaned *Premier* any money." (Emphasis in original.) Premier is "a complete stranger to these proceedings."

¶ 22    According to Bedi, "the parties rushed to correct that mistake [by obtaining a *nunc pro tunc* order] within one day of learning it had occurred two years ago \*\*\*. Premier was *corrected* to Premium on paper, but the structures to collect that judgment as properly entered were already in place." (Emphasis in original.) After obtaining the 2022 judgment, the parties "operated in good-faith and [Bedi] was collecting the receivables from [Premium], and NOT Premier, for years without interruption."

¶ 23    Also according to Bedi, there was nothing improper about the 2022 judgment against Premium. "The judgment entered against [Premium] \*\*\* is specifically calculated based on amounts of money that were actually loaned by [Bedi] to [Premium], and is entered against the company that actually received the loans." Bedi attached the affidavit of Batra demonstrating that his 2022 claim against Premium that was the subject of the 2022 judgment "was wholly legitimate and based on a credit facility through which Bedi funded the business operations of [Premium] from 201[9] to 2022 in the principal amount of $1,423,570." Batra's affidavit, in turn, provided that Bedi had loaned him the $1.4-plus million sum, on behalf of Premium, over the course of years, not, as set forth in the 2022 judgment, "associated with" a single 2019 promissory note. Bedi attached a demonstrative spreadsheet showing the distributions. Bedi also attached a second demonstrative spreadsheet showing over $500,000 in payments made between January 2023 and May 2024, which appear to be partial repayments on the loan. Finally, Bedi attached a single

8

promissory note, dated June 30, 2020, for "$175,000 and any additional advance" due on demand, given 30 days' notice.

¶ 24    On December 19, 2024, MedLegal replied, arguing that Bedi's standing argument lacked merit because permission to intervene bestows standing. See *State Bank of Lake Zurich v. Thill*, 135 Ill. App. 3d 747, 753 (1985). MedLegal also argued that facts set forth in Bedi's response reasonably suggested collusion and fraud between Bedi and Batra. Those facts include that Bedi, who is Batra's brother-in-law, filed his complaint in replevin in state court against Batra and "Premier" just two days after the arbitration service confirmed the commencement of the arbitration that would ultimately lead to MedLegal's judgment against Premium in federal court. Bedi's complaint in replevin and resulting judgment had set forth that Bedi had loaned Batra and "Premier" $1.43 million "associated with a promissory note dated August 1, 2019," but neither Bedi's response nor Batra's affidavit "made any mention" of said promissory note. Instead, Bedi now alleged that he loaned Batra the funds in many installments between 2019 and 2022. The only promissory note of record is dated June 30, 2020, in the amount of "$175,000 and any additional advances."

¶ 25    In further support, MedLegal attached Batra's November 11, 2024, deposition testimony given during his citation examination in connection with the federal case. Premium was represented at the deposition by Weissberg. During the deposition, Batra answered equivocally as to whether promissory notes supported the alleged loan to himself and Premium. His final position was that a series of notes supported the total loan, but he had yet to produce them as requested. Batra testified that Bedi gave him the funds personally but that they were for the benefit of Premium. Batra appeared to agree that Premium tax documents did not document a loan from

9

Bedi to Premium.  However, Premium's general ledger did appear to document the loan(s), or at least their repayment, showing that Premium had repaid Bedi $529,400 since early 2023.

¶ 26     On January 8, 2025, the trial court heard argument on MedLegal's petition to intervene and the propriety of the *nunc pro tunc* order.  Preliminarily, MedLegal updated the court that, on January 7, 2025, the federal court had ruled that MedLegal's judgment lien against Premium had priority over any interests that Bedi might have against Premium.  The trial court asked whether the federal court's ruling rendered moot the question of MedLegal's interest in the state case.  MedLegal responded it was not moot because Bedi could appeal the federal court's ruling.

¶ 27     Concerning the right to intervene, the trial court asked MedLegal whether it believed it would have had a right to intervene in July 2022, when Bedi filed a complaint in replevin.  MedLegal conceded that it would not, because it did not have a sufficient interest at that time.  It had a "potential judgment," not yet an adverse claim.  Bedi argued that the trial court's question "hit on it."  MedLegal should not be granted leave to intervene, because they had no right to oppose entry of the judgment against "Premier" or Premium as of the day it was entered.

¶ 28     Concerning the propriety of the *nunc pro tunc* order, MedLegal rested largely on its pleadings.  It reiterated, however, that the 2022 judgment had been based on an August 1, 2019, promissory note.  Bedi all but admitted in his answer that there was no such promissory note.  Bedi responded, consistent with his pleading, that the 2022 judgment contained a simple spelling error, a difference of two letters.  Premium had been making payments in satisfaction of the 2022 judgment prior to MedLegal's petition to intervene.  Bedi did not realize that he had made a spelling error until he had tried to intervene in MedLegal's federal action against Premium.

10

¶ 29     The trial court denied MedLegal's petition to intervene, explaining: "I don't understand how a third party who's not a part of this [state] litigation has [any] right to come in and complain about the judgment" and the absence of a 2019 promissory note. It further reasoned:

> "[W]hen the creditor [MedLegal] has its own cause of action against the defendant [Premium], has its own rights of recovery, and are by all accounts doing a good job exercising those rights, [and] the federal judge has decided that you [MedLegal] take first priority *** it makes this exercise somewhat moot."

The trial court did not reach the propriety of the *nunc pro tunc* order, explaining: "I don't need to get to the issue of vacating my [*nunc pro tunc* order], because the ruling is that the motion to intervene is denied." This appeal followed.

¶ 30                              II. ANALYSIS

¶ 31     MedLegal challenges the trial court's denial of its section 2-408(a)(2) petition to intervene as of right. "Intervention is a matter within the sound discretion of the trial court and its decision will not be disturbed absent a clear abuse of discretion." *Redmond v. Devine*, 152 Ill. App. 3d 68, 74 (1987). The trial court abuses its discretion when its decision is arbitrary, unreasonable, or one that no reasonable person would adopt. *Rosen v. Ingersoll-Rand Co.*, 372 Ill. App. 3d 440, 448 (2007).

¶ 32     Section 2-408 of the Code provides in relevant part:

> "(a) Upon *timely* application anyone shall be permitted as of right to intervene in an action: *** (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action[.]

> ***

11

(e) A person desiring to intervene shall present a petition setting forth the grounds for intervention, accompanied by the initial pleading or motion which he or she proposes to file." 735 ILCS 5/2-408(a)(2), (e) (West 2022) (Emphasis added.)

The purpose of subsection 2-408(e) is to give both the trial court and any opposing party a clear indication of the relief that the applicant will be seeking if its petition to intervene is granted. *Soyland Power Co-op. v. Illinois Power Co.*, 213 Ill. App. 3d 916, 920 (1991). "Only when the goals of the potential intervenor are revealed in this fashion can the trial court and any opposing party assess the appropriateness of the petition to intervene." *Id*.

¶ 33　　　　The aim of the intervention statute was to liberalize the practice of intervention, so as "to avoid *** the relitigation of issues in a second suit which were being litigated in a pending action." *Caterpillar Tractor Co. v. Lenckos*, 84 Ill. 2d 102, 112 (1981). To obtain leave to intervene as of right, an applicant must present a timely application, have an interest in the pending suit, and show that the parties to the pending suit do not adequately represent its interests. *Joyce*, 253 Ill. App. 3d at 616-617. As to timeliness, a party generally *cannot* intervene after the rights of the original parties have been determined and a final decree has been entered. *Citicorp Savings of Illinois v. First Chicago Trust Company of Illinois*, 269 Ill. App. 3d 293, 298 (1995). A party who seeks to intervene post-judgment must show diligence by explaining its failure to seek intervention prior to the judgment being entered. *Schwechter v. Schwechter*, 138 Ill. App. 3d 602, 604-05 (1985). If the court is satisfied with the applicant's diligence, it may allow intervention if intervention is *necessary* to protect the intervenor's interest. *Citicorp*, 269 Ill. App. 3d at 298. That interest, however, must have existed at the time of the judgment. *Scott v. Illinois Protestant Children's Home, Inc.*, 95 Ill. App. 3d 552, 558-59 (1981). An applicant need not have a direct interest in the subject matter of the pending suit, but its interest must be greater than that of the general public,

12

and it must have an enforceable or recognizable right such that it stands to gain or lose by the judgment. *Caterpillar*, 84 Ill. 2d at 112; *Cooper v. Hinrichs*, 10 Ill. 2d 269, 277 (1957) (enforceable or recognizable right).

¶ 34    Here, the trial court acted within its discretion in denying MedLegal's petition to intervene. First, the court observed that MedLegal had no interest in the subject matter of Bedi's lawsuit against Batra and "Premier" or Premium at the time of the 2022 judgment; MedLegal had no enforceable or recognizable right such that it stood to gain or lose by the 2022 judgment at that time. See *Scott*, 95 Ill. App. 3d at 558-59. MedLegal appears to acknowledge this point and did not seek intervention to petition to vacate the 2022 judgment itself. Rather, MedLegal sought intervention to vacate the 2024 *nunc pro tunc* order, which purported to correct a clerical error in the 2022 judgment. MedLegal had obtained its judgment lien prior to the 2024 *nunc pro tunc* order, and, thus, its alleged interest existed at the time of *that* order. This interest, however, such that it is, does not support intervention as it relates to the *nunc pro tunc* correction of the 2022 judgment.

¶ 35    Second, the trial court considered that MedLegal had a different forum in which to litigate its interests and was "by all accounts doing a good job exercising those rights, [and] the federal judge has decided that [MedLegal] takes first priority." MedLegal concedes on appeal that it has been given a forum to present its claim of lien priority. See, *e.g.*, *Citicorp*, 269 Ill. App. 3d at 298. It argues, however, that the federal court's lien-priority ruling does not necessarily have an identical impact on the parties' respective rights as would vacating the *nunc pro tunc* order. Were the court to vacate the *nunc pro tunc* order, "Bedi would have *no* judgment against Premium to enforce and, therefore, *no* interest, superior or otherwise in Premium's property." (Emphasis in MedLegal's reply brief.) MedLegal cites no authority to suggest that the court's consideration of

13

whether intervention is *necessary* to protect an applicant's interest should turn on whether the potential intervention forum provides identical relief to that of another forum.

¶ 36    MedLegal focuses much of its brief arguing that it was diligent—it filed its petition to intervene just two weeks after learning of the *nunc pro tunc* order. However, even assuming for the sake of analysis that the appropriate diligence inquiry concerned the timing of the *nunc pro tunc* order, diligence is merely one consideration when an applicant seeks to intervene after the rights of the original parties have been determined and a final decree has been entered. The court should also consider whether the applicant's interest existed at the time of the judgment and whether intervention is necessary to protect that interest or whether the applicant had or will have another forum available to protect its interest. In our view, the court acted within its discretion in balancing these concerns.

¶ 37    MedLegal's remaining arguments do not convince us that a different result is warranted. MedLegal argues extensively in support of the interest it presently has in maintaining its lien priority. However, as explained, the court acted within its discretion to find this argument subordinate to the considerations of MedLegal's lack of interest at the time of the 2022 judgment and availability of alternative forums.

¶ 38    MedLegal also argues that the *nunc pro tunc* order was improperly granted because the misnomer theory was not supported by clear and definite evidence—most notably, there was no promissory note supporting Premium as the judgment debtor for the judgment amount. In its view, the 2024 *nunc pro tunc* order made a substantive amendment to the 2022 judgment when it provided that the 2022 judgment had been against Premium Health Solutions. Having affirmed the trial court's decision to deny intervention, there is no need to reach the propriety of the *nunc pro tunc* order. Parenthetically, we observe that MedLegal does not dispute Bedi's claim that he

14

never loaded funds to "Premier," and "Premier" is a "complete stranger to these proceedings." Furthermore, *Premium's* attorney of record in this appeal, Weissberg, signed the answer to Bedi's 2022 complaint in replevin, prepared the 2022 stipulated judgment, submitted the agreed *nunc pro tunc* order, and represented Premium in federal court. MedLegal's argument that the alleged basis for the 2022 judgment—a loan associated with an August 1, 2019, promissory note—does not exist does not advance MedLegal's claim that the 2022 judgment was not, nevertheless, entered against Premium. Indeed, the alleged absence of the promissory note appears to be backdoor challenge to the *substance* of the 2022 judgment against Premium, which MedLegal had no interest in at the time it was entered.

¶ 39     MedLegal, citing *Black as Trustees of Black v. Black*, 2024 IL App (1st) 221667, ¶ 3, notes that courts have granted leave to intervene post-judgment to challenge judgments that directly impact their legal rights. In *Black*, however, the applicants sought to intervene so that they could challenge the substance of the original judgment pursuant to section 2-1401 of the Code. *Id.* ¶ 2 (735 ILCS 5/2-1401 (West 2022)). Not only did the *Black* applicants' interest in the subject matter of the litigation exist at the time of the judgment, they had been necessary parties. *Id.* ¶ 49. The instant case, in which MedLegal argues in favor of leaving the 2022 judgment untouched, admits that it did not have an interest in the subject matter of Bedi's lawsuit in 2022, and seeks to vacate only the 2024 *nunc pro tunc* order, is wholly inapposite.

In sum, the trial court did not abuse its discretion in denying MedLegal's petition to intervene to seek to vacate the *nunc pro tunc* order.

¶ 40                                III. CONCLUSION

¶ 41     The judgment of the circuit court of Du Page County is affirmed.

¶ 42     Affirmed.

15